STATE of Wisconsin, Plaintiff-Respondent,†

v.

William NIELSEN, Defendant-Appellant.

Court of Appeals

*No. 00–3224–CR. Submitted on briefs May 21, 2001.—Decided July 31, 2001.*

2001 WI App 192

(Also reported in 634 N.W.2d 325.)

† Petition to review denied 10-23-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Diane M. Welsh*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE C.J. William Nielsen appeals from a judgment convicting him of second-degree sexual assault and from an order denying his motion for postconviction relief. Nielsen seeks a new trial based on ineffective assistance of counsel and on his contention that the trial court erroneously denied his objection to the State's use of two letters at trial. For the reasons discussed below, we disagree and affirm the judgment and order.

## STATEMENT OF FACTS

¶ 2. Nielsen was convicted of second-degree sexual assault of his former girlfriend, T.H. T.H. and Nielsen had a brief relationship during which they lived together in Wisconsin. When the relationship ended, Nielsen went to Chicago. Weeks later he returned to Wisconsin to stay with T.H. During Nielsen's visit, he slept on the living room couch.

¶ 3. T.H. testified that late one night, Nielsen came home drunk, entered T.H.'s bedroom and forcibly had sexual intercourse with her. Nielsen denied that the incident occurred. Because T.H. did not immediately report the incident to law enforcement, no direct physical evidence of the assault was available. Instead, the primary evidence against Nielsen was T.H.'s testimony and the testimony of others who saw a bruise on her breast.

¶ 4. Nielsen's theory of defense was that T.H. fabricated the sexual assault because she was disappointed that they did not renew their romantic relationship when Nielsen returned to Wisconsin. Nielsen argued that T.H. learned of Nielsen's relationship with another woman, Marilize, to whom he is now married,

and that T.H. lied to get back at Nielsen. A jury found Nielsen guilty and he was sentenced to seventy-eight months in prison.

¶ 5. Nielsen filed a motion for postconviction relief seeking a new trial on numerous grounds, including ineffective assistance of counsel, plain error and a new trial in the interest of justice. The trial court denied his motion and this appeal followed.

## ISSUES

¶ 6. Nielsen argues that five specific trial errors entitle him to a new trial. First, he contends that the trial court erroneously allowed the State to use two letters to impeach a defense witness that were not previously disclosed to the defense. Nielsen also contends, in the alternative, that trial counsel was ineffective for failing to more fully investigate, discover the existence of the letters and strenuously object to their use at trial.

¶ 7. Next, Nielsen raises four unobjected-to errors in the context of an ineffective assistance of counsel claim: (1) counsel failed to make appropriate peremptory challenges; (2) counsel failed to object to the admission of testimony concerning Nielsen's post-*Miranda*[1] statement to police; (3) counsel failed to object to testimony concerning Nielsen's alleged theft of T.H.'s compact discs (CDs) and necklace; and (4) counsel failed to object to the prosecutor's closing argument.

██

¶ 8. Finally, Nielsen argues that the same errors entitle him to a new trial under the "plain error" and "new trial in the interest of justice" doctrines. Although

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Nielsen provides several paragraphs of general information on these doctrines, he fails to specifically apply the doctrines to the alleged errors in the case. We decline to develop Nielsen's argument for him and, therefore, will not specifically address these doctrines with respect to each alleged error. *See Estrada v. State*, 228 Wis. 2d 459, 465 n.2, 596 N.W.2d 496 (Ct. App. 1999) (We need not consider arguments not developed.). However, we note generally that we are confident that the alleged errors do not constitute plain error and do not justify granting a new trial in the interest of justice.

### STANDARDS OF REVIEW

¶ 9. Nielsen's first argument is that the trial court erroneously exercised its discretion by allowing the State to cross-examine Nielsen and Marilize about two letters she wrote to him, despite the fact that the State had not disclosed the letters to the defense. Nielsen contends the State's action constituted a discovery abuse and that the trial court should not have allowed the State to use the letters.

¶ 10. WISCONSIN STAT. § 971.23(7)[2] requires the trial court to exclude evidence that is not produced pursuant to a discovery demand unless "good cause is shown for failure to comply." *State v. Martinez*, 166 Wis. 2d 250, 257, 479 N.W.2d 224 (Ct. App. 1991). Whether a party has satisfied its burden is a question of law that we review without giving deference to the trial court's conclusion. *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 811, 416 N.W.2d 906 (Ct. App. 1987).

---

[2] All statutory references are to the 1999–2000 version unless indicated otherwise.

¶ 11. Nielsen's remaining arguments concern numerous trial errors to which his counsel did not object. It is axiomatic that to preserve a proposed trial court error for review, trial counsel or the party must object in a timely fashion with specificity to allow the court and counsel to review the objection and correct any potential error. Absent such a procedure, the administrative rule of waiver may be invoked. In criminal cases, however, the normal procedure is to address the consequences of the rule "within the rubric of the ineffective assistance of counsel." *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). We follow that procedure here.

¶ 12. A defendant claiming ineffective assistance of counsel must prove both that his or her lawyer's representation was deficient and, as a result, that he or she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Johnson*, 133 Wis. 2d 207, 216–17, 395 N.W.2d 176 (1986). If we conclude that the defendant has not proven one prong, we need not address the other. *See Strickland*, 466 U.S. at 697. To prove deficient performance, a defendant must show specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. We "strongly presume" counsel has rendered adequate assistance. *Id.*

¶ 13. To demonstrate prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In applying this prin-

ciple, reviewing courts are instructed to consider the totality of the evidence before the trier of fact. *State v. Johnson*, 153 Wis. 2d 121, 129–30, 449 N.W.2d 845 (1990).

¶ 14. Whether a lawyer gives a defendant ineffective assistance is a mixed question of law and fact. *Johnson*, 133 Wis. 2d at 216. The trial court's findings of fact will be upheld unless they are clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). Whether proof satisfies either the deficiency or the prejudice prong is a question of law that this court reviews without deference to the trial court's conclusions.[3] *See id.*

### DISCUSSION

### A. Prosecutor's use of letters not previously disclosed to the defense

¶ 15. Nielsen's first argument is that the trial court erroneously exercised its discretion by allowing the State to cross-examine Nielsen and Marilize about two letters she wrote to him before they were married. Neither letter had been provided to Nielsen in the discovery process.

¶ 16. The first letter was introduced when the State cross-examined Nielsen. Although Nielsen's counsel did not immediately object when the State first asked Nielsen about the letter, counsel objected when the State asked Nielsen to read the letter aloud. A sidebar conference was held. Thereafter, on the record,

---

[3] Thus, although Nielsen has styled many of his arguments in terms of the trial court's legal conclusions, we will not detail the trial court's specific conclusions.

Nielsen's counsel objected "to the letter on the grounds that it wasn't previously provided to me by way of discovery."

¶ 17. The State responded that it did not know that the letter was going to be a relevant document until after Nielsen testified. The trial court overruled Nielsen's objection and Nielsen read the letter aloud. Marilize was also asked to read the letter aloud. The tone of the letter suggested that Marilize may have romantic feelings for Nielsen, arguably contradicting Nielsen's testimony that he and Marilize were not romantically involved before he began a relationship with T.H. Nielsen also testified that the letter had been in his personal belongings and that T.H. "[a]pparently . . . took it out of my personal stuff."

¶ 18. The second letter was introduced, without objection by Nielsen, when the State cross-examined Marilize. Marilize was asked to read parts of her letter, which was written days after the alleged sexual assault. The letter contradicted her previous testimony about her relationship and visits with Nielsen.

¶ 19. Nielsen argues that the State's use of the letters violated Wis. Stat. § 971.23(1)(e) and (g), and that his discovery demand was broad enough to include a request for the letters.[4] Our review of a claimed discovery violation under Wis. Stat. § 971.23 is subject

---

[4] Wisconsin Stat. § 971.23(1) provides in relevant part:

> (1) What a district attorney must disclose to a defendant. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:
>
> . . . .

to a harmless error analysis. *See State v. Koopmans*, 202 Wis. 2d 385, 396, 550 N.W.2d 715 (Ct. App. 1996). The test of harmless error is whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, that would convict the defendant beyond a reasonable doubt. *See Wold v. State*, 57 Wis. 2d 344, 356, 204 N.W.2d 482 (1973). Assuming, without deciding, that the State was required to disclose the letters before or at trial, we conclude that any trial court error in allowing use of the letters, and counsel's error in failing to object to the second letter, were harmless.

¶ 20. We are satisfied that the introduction of the two letters, only one of which was read in its entirety at trial, provided only minimal probative value in the context of the two-day trial. The letters do not conclusively prove that Nielsen and Marilize had a romantic relationship prior to his moving in with T.H. Moreover, the letters did not directly address the sexual assault, which was, of course, the primary issue in the case. Nielsen has failed to explain, and we do not see, how the introduction of the letters affected his defense, except

(d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.

(e) Any relevant written or recorded statements of a witness named on a list under par. (d) . . .

. . . .

(g) Any physical evidence that the district attorney intends to offer in evidence at the trial.

to contradict his characterization of his relationship with Marilize, which was at best a collateral issue in the case.

¶ 21. Also, the letters were unlikely to have had a greater impact than the testimony of the witnesses who appeared in court, including Nielsen, Marilize, T.H., and several other witnesses who discussed the assault with T.H. before she reported the matter to the police. We see no reasonable possibility that the jury would have reached a different result absent the State's use of the letters.

¶ 22. Next, we briefly address Nielsen's alternative argument that trial counsel was ineffective for failing to seek a recess in order to review the documents before the examinations continued and to investigate the facts of the case sufficiently to discover the existence of the letters. We reject Nielsen's argument that counsel was deficient for not seeking a recess because Nielsen fails to explain how a recess would have changed the outcome of the testimony or the case.

¶ 23. We also reject Nielsen's contention that counsel deficiently investigated the facts of the case. Nielsen appears to argue that his counsel was deficient for failing to discover information readily available to Nielsen and Marilize: the fact that Marilize wrote letters to Nielsen during Nielsen's trips to Wisconsin. This court will not find counsel deficient for failing to discover information that was available to the defendant but that defendant failed to share with counsel. Also, because we have already concluded that the admission of the letters was harmless, it follows that counsel's failure to discover the letters so that counsel could prevent their admission was not deficient.

482

## B. Peremptory strikes

¶ 24. Nielsen contends that trial counsel was ineffective for failing to use peremptory challenges to strike two jurors who he claims were "objectively harmful" to Nielsen. The United States and Wisconsin Constitutions guarantee a criminal defendant the right to a trial by an impartial jury. *State v. Oswald*, 2000 WI App 2, ¶ 16, 232 Wis. 2d 62, 606 N.W.2d 207; *see also* U.S. CONST. AMEND. VI; WIS. CONST. art. I, § 7; *State v. Lindell*, 2001 WI 108, ¶ 118, 629 N.W.2d 223 (the fundamental law is that an accused is entitled to be tried by an impartial jury). A juror who has expressed or formed any opinion, or is aware of any bias or prejudice in the case, should be removed from the panel. *Oswald*, 2000 WI App 2 at ¶ 16; *see also* WIS. STAT. § 805.08(1). Additionally, if a juror is not indifferent in the case, the juror shall be excused. *Oswald*, 2000 WI App 2 at ¶ 16; *see also* WIS. STAT. § 805.08(1).

¶ 25. Although these standards provide a criminal defendant with grounds to appeal the decision of a biased jury, they are inapplicable here because Nielsen does not assert that counsel should have moved to dismiss any specific jurors for cause, that the trial court should have dismissed any jurors for cause, or that the impaneled jury was biased. Rather, Nielsen takes issue with trial counsel's general strategy in selecting jurors. Nielsen explains:

> Here, [the two prospective jurors] disclosed experiences and beliefs which a criminal defense lawyer trying a sexual assault case would not want at the table during jury deliberations. . . . It is, therefore, incumbent upon the trial lawyer to be able to justify choosing those he struck over those he allowed to remain. This record does not support the choices counsel made.

██

¶ 26. We will not second guess trial counsel's selection of trial tactics or strategies in the face of alternatives that he or she has considered. *See State v. Felton*, 110 Wis. 2d 485, 502–03, 329 N.W.2d 161 (1983). Moreover, we are aware of no legal authority holding counsel deficient where the impaneled jury was impartial, perhaps because where there is no allegation that any of the actual jurors were biased, it would be speculative for a court to conclude that the jury would have been fairer had trial counsel used peremptory strikes differently.[5] *See Erickson*, 227 Wis. 2d at 774 (where there was no allegation that impaneled jury was biased, court examining whether defendant suffered actual prejudice from deficient number of peremptory strikes could do no better than to speculate on what would have been the result of defendant's trial had the trial court not erred; such speculation is insufficient to prove prejudice).

---

[5] We stress that Nielsen has not alleged that the jurors in question could have been struck for cause. In a recent supreme court decision, the court overruled prior precedent and held that even if a defendant is forced to use a peremptory strike to remove a juror who the trial court erroneously refused to strike for cause, the defendant is nonetheless not entitled to a new trial when the impaneled jury is impartial. *See State v. Lindell*, 2001 WI 108, ¶¶ 5, 113, 629 N.W.2d 223. If a new trial is not granted under those facts, it surely is not justified where the defendant is not forced to use any peremptory strikes to remove biased jurors and, instead, merely speculates that the result of the trial would have been different had the jury contained two different impartial jurors.

¶ 27. Similarly, in this case, we can do no better than speculate on what would have been the result if Nielsen's counsel had used his peremptory strikes differently. Because Nielsen cannot demonstrate that he was prejudiced by how counsel chose to use peremptory strikes, we conclude Nielsen was not denied the effective assistance of counsel. We need not discuss further whether Nielsen's counsel was deficient for using the peremptory strikes as he did. *See Strickland*, 466 U.S. at 697 (if we conclude that the defendant has not proven one prong of ineffective assistance of counsel test, we need not address the other).

### C. Testimony concerning Nielsen's post-*Miranda* statement to police

¶ 28. Nielsen argues that his counsel was deficient for failing to object to the State's cross-examination of detective Michael Josephson. Nielsen called Josephson in his case-in-chief and asked him questions about Josephson's post-arrest, post-*Miranda* interview with Nielsen. Nielsen contends that the State's questions on cross-examination constituted a violation of his right to remain silent. We disagree and, therefore, conclude that counsel's failure to object was not deficient performance.

¶ 29. Nielsen asked Josephson, Nielsen's first witness, the following questions on direct examination:

[Nielsen's Counsel]: It's my understanding that you met with Mr. Nielsen with regard to the investigation?

[Josephson]: Yes.

[Nielsen's Counsel]: It's also my understanding that Mr. Nielsen denied that he was involved in the alleged assault?

[Josephson]: That's correct.

[Nielsen's Counsel]: He denied that on numerous occasions?

[Josephson]: That's correct.

On cross-examination, the State asked Josephson about the interview:

[State]: [Y]ou said on direct examination Mr. Nielsen denied that, doing the sexual assault?

[Josephson]: Yes.

[State]: Did he answer all of the questions that you asked him?

[Josephson]: No, he did not.

[State]: Can you estimate how many questions he declined to answer?

[Josephson]: Between three and five.

[State]: And do you recall what questions he declined to answer?

[Josephson]: I asked him if he used drugs and he kind of tried to skirt that question. I asked him if he believed that if anyone that did something like this deserved a second chance under any circumstances and he said I don't want to answer that because that's a Catch-22 question.

I asked him if it was possible that there would have been any bite marks on [T.H.'s] breast that would have matched his teeth impressions and he said, "Like right now"? I said . . . "At any time," and he said, "No comment."

It is undisputed that the State did not comment on this testimony at any other time during the trial or closing argument.

¶ 30. The privilege against self-incrimination is guaranteed by art. I, § 8, of the Wisconsin Constitution and by the Fifth Amendment to the United States Constitution. *State v. Adams*, 221 Wis. 2d 1, 7, 584 N.W.2d 695 (Ct. App. 1998). The use of a defendant's silence for impeachment purposes has been long de- cided. It has been held improper for the State to comment upon a defendant's choice to remain silent at or before trial. *Id.* at 7–8 (citing *Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966) (defendant claiming privilege in face of accusation); *Doyle v. Ohio*, 426 U.S. 610, 619 (1976) (constitutional error to impeach a defendant with his or her post-arrest, post-*Miranda* silence)).

¶ 31. If, however, the defendant opens the door to government questioning by defendant's own remarks about post-arrest behavior or by defense counsel's ques- tioning, *see Doyle*, 426 U.S. at 619 n.11 (discussing prosecution's permissible use of post-arrest silence to "challenge the defendant's testimony as to [the defendant's] behavior following arrest"), the govern- ment may use the defendant's silence for the limited purpose of impeaching the defendant's testimony. *United States v. Gant*, 17 F.3d 935, 941 (7th Cir. 1994). At the same time, it may not argue that the defendant's silence is inconsistent with the defendant's claim of innocence. *Id.*

¶ 32. The test for determining if there has been an impermissible comment on a defendant's right to remain silent is whether the language used was mani- festly intended or was of such character that the jury would naturally and necessarily take it to be a comment

on the defendant's right to remain silent. *United States v. Mora*, 845 F.2d 233, 235 (10th Cir. 1988). The court must look at the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury. *Id.* Whether a defendant's right to remain silent was violated is a question involving the application of constitutional principles to undisputed facts that we review de novo. *See Adams*, 221 Wis. 2d at 6.

¶ 33. First, we address the State's argument that Nielsen's argument is inapplicable because Nielsen did not remain silent. The State explains: "After being informed of his *Miranda* rights, Nielsen spoke to the officer – generally denying his guilt. This is the information [elicited on cross-examination]." Although we agree that Nielsen's responses to some of the questions are more accurately characterized as nonresponsive answers than silence, we conclude that Josephson's testimony that Nielsen "refused to answer" three to five questions and that Nielsen responded, "No comment" when asked about the bite marks constituted references to Nielsen's silence.

¶ 34. Therefore, the next issue is whether the State's questions and Josephson's answers constituted an impermissible comment on Nielsen's right to remain silent. Viewing the State's comments in context, we conclude that neither were they "manifestly intended" to be a comment on defendant's post-arrest silence (or, more accurately, on his refusal to answer certain questions), nor would the jury "naturally and necessarily" take them as such. *See Mora*, 845 F.2d at 235.

¶ 35. The State's purpose in asking Josephson about the completeness of Nielsen's answers was a

direct response to Nielsen's counsel's leading questions that implied Nielsen had actively denied the sexual assault throughout his interview with Josephson. We conclude that Nielsen opened the door to government questioning by his counsel's questioning, and the State was permitted to clarify that Nielsen had not answered all questions, for the limited purpose of impeaching the inference that Nielsen had continued to actively deny the assault throughout the interview. *See Gant*, 17 F.3d at 941. Additionally, we conclude that the State did not, simply by asking the questions and eliciting Josephson's responses, argue that Nielsen's silence was inconsistent with his claim of innocence. *See id.* at 941–42.

■■■■

¶ 36. We conclude that the State did not impermissibly comment on Nielsen's post- *Miranda* silence. Because the State's questions were not improper, Nielsen's counsel was not deficient for failing to object to the State's questions.[6]

### D. Testimony concerning a missing necklace and CDs

¶ 37. Nielsen contends his trial counsel provided ineffective assistance with respect to evidence of a missing necklace and CDs by failing to file a motion in limine, object to its admission at trial, object to the State's argument at trial and seek a mistrial. We reject Nielsen's argument because we conclude counsel did not perform deficiently.

---

[6] Nielsen does not argue that counsel's performance was deficient for opening the door to the State's questions. This may reflect Nielsen's recognition of counsel's strategy to emphasize to the jury that Nielsen had, from the beginning, maintained his innocence.

¶ 38. T.H. testified that after Nielsen left for Chicago the second time, $600 worth of CDs and a necklace were missing from her home. She said she never reported the missing items to the police because, "I was told that [Nielsen] was going to send the CDs back and also the necklace." However, she never got them back. Nielsen's testimony about the items was brief:

> [State]: Did you take a necklace that belonged to [T.H.]?
>
> [Nielsen]: With permission I took a necklace and CDs? [sic]
>
> [State]: Did you –
>
> [Nielsen]: I know I never did – this was on the date that I left for Chicago. What had happened – no I didn't.

¶ 39. In closing argument, the State briefly referred to T.H.'s and Nielsen's different testimony about the CDs and necklace. The State used the information to argue that T.H. had not fabricated the sexual assault, explaining that if T.H. had simply wanted to get Nielsen in trouble, she could have reported the theft of her property, rather than sexual assault. "If she wanted to get him in trouble, wouldn't that be the easiest to . . . talk about in court, rather than talking about somebody [sexually assaulting you]?"

¶ 40. Nielsen argues that evidence about the CDs and necklace is evidence of other bad acts that would not have been admitted if trial counsel had properly objected. Although the trial court chose to analyze whether the testimony was admissible as other bad acts evidence, we need not reach that issue. Even if the evidence was potentially objectionable, trial counsel provided undisputed testimony that it was his decision, based on trial strategy, not to oppose the introduction of the testimony.

¶ 41. Counsel testified that he was aware of T.H.'s allegation that Nielsen had taken some CDs and a necklace when he left her apartment. Counsel said that Nielsen told him that he had borrowed the items and had not actually stolen them. "In the event that he borrowed them, I did not see it as other-bad-acts or wrongful-acts evidence."

¶ 42. Counsel further testified that he thought the issue was relevant to the credibility of the parties, and that Nielsen had never conceded to counsel that he had stolen the items. "I don't think it was an open issue from his perspective. He said he did not steal the items." Counsel agreed that his strategy had been to "attack the credibility of the complainant and, in effect, to raise a reasonable doubt about her veracity."

¶ 43. Furthermore, he agreed, it was his trial strategy to suggest that because T.H.'s relationship had ended badly, that explained why T.H. had fabricated allegations. In other words, the false allegations of theft were "part and parcel" of her false allegation of sexual assault. Counsel also testified that he did not see the issue of the CDs and necklace as "a big deal."

¶ 44. We will not second guess trial counsel's selection of trial tactics or strategies in the face of alternatives that he or she has considered. *See State v. Felton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). Rather, we "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *State v. Pitsch*, 124 Wis. 2d 628, 636, 369 N.W.2d 711 (1985).

¶ 45. Counsel explained that he considered the evidence and essentially decided to allow its introduction so that he could argue that T.H. was also making

false allegations of theft. This defense was a reasonable trial strategy by defense counsel and did not constitute ineffective assistance of counsel. *See Felton*, 110 Wis. 2d at 502.

### E. The State's closing argument

¶ 46. Nielsen complains that his trial counsel provided ineffective assistance by failing to object to two portions of the State's closing argument. Counsel is allowed considerable latitude in closing argument. *See State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979). The prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him or her and should convince the jurors. *See id.* "The line between permissible and impermissible argument is thus drawn where the prosecutor goes beyond reasoning from the evidence to a conclusion of guilt and instead suggests that the jury arrive at a verdict by considering factors other than the evidence." *Id.*

¶ 47. In this case, the prosecutor argued:

> She says after she took a bath—that's a very telling point because I think if a person were making up this story, I think it would be difficult to come up and fabricate such a pointed detail as taking a bath, because the things really happened. The natural reaction of the victim, feeling defiled and dirty by the rapist, is to get up and clean herself and do that immediately and to cleanse his semen off her body and get every bit of him off her body and that is exactly how she reacted.
>
> . . . . .
>
> After she went to work on that date she ended up doing the same regimen she did on other days. . . . She

didn't report it to the police right away and that's natural. Citizens out on the street – not citizen assault cases but citizens on the street, when questioned as to why didn't you report it right away – victims of horrible crimes, robberies, they're scared.

¶ 48. Nielsen argues that these comments were improper because there was no evidence to support the statements and the prosecutor was vouching for T.H.'s credibility. We disagree. T.H. testified that after the assault, she was afraid and humiliated. She said she felt "really dirty and ashamed." She said Nielsen returned to the living room and she waited until he was snoring before getting out of bed. She stated that she took a bath and left for work early.

¶ 49. T.H. also testified that she did not call the police the day of the assault "[b]ecause I was afraid of him and I was embarrassed and humiliated, ashamed, I didn't want anybody to know that this had happened to me."

¶ 50. We conclude that the prosecutor's comments were permissible characterizations of T.H.'s testimony. We also do not read the State's comments as introducing expert testimony on victims' reactions to crime. Rather, the State appealed to the jurors to use their common experience and general knowledge of the average person's reaction to frightening events.

¶ 51. Additionally, even if the comments were potentially objectionable, counsel was not deficient in failing to object. Counsel testified that it is part of his general trial strategy not to object to the State's closing argument "unless there's something substantially inappropriate in regards to counsel's arguments." He explained:

> The jury's instructed as how to treat our arguments and that our arguments are not fact; that they are simply that, arguments of counsel. And I have concerns about a jury perceiving me, personally, as being somewhat obstructive and things of that nature, you know, objecting, especially in terms of the argument portions of the trial.

Counsel also agreed that objections have the undesirable effect of underscoring the objectionable comments being made, thereby adding emphasis to them.

¶ 52. Although counsel conceded that it did not specifically occur to him to object when the State argued about T.H. bathing and feeling scared, we are satisfied that counsel has provided a reasonable explanation for his general strategy on objections in the absence of "substantially inappropriate" statements by the State. Based on counsel's explanation that he rarely objects during closing argument and our own conclusion that the State's comments were not objectionable, we conclude that Nielsen has failed to prove that his counsel provided deficient representation during the State's closing argument.

*By the Court.*—Judgment and order affirmed.