KESSLER, P.J.
¶1 Marcia Render appeals a judgment of conviction, following a jury trial, of one count of second-degree reckless homicide-infliction of physical pain or injury, as an act of domestic abuse, and one count of strangulation and suffocation, as an act of domestic abuse. She also appeals the order denying her postconviction motion for relief on the basis of ineffective assistance of counsel. Because we conclude that Render is entitled to a Machner[1] hearing, we reverse the postconviction order and remand for a Machner hearing.[2]
BACKGROUND
¶2 On December 13, 2014, Render was charged with one count of second-degree reckless homicide-infliction of physical pain or injury, as an act of domestic abuse, and one count of strangulation and suffocation, as an act of domestic abuse, for the death of her sister, Sheri Head. According to the criminal complaint, on December 8, 2014, Render and Head went to a bar together and were drinking. Later that evening, the sisters were at Render's apartment where the two began arguing. The argument became heated and physical, with Head screaming and throwing things down the stairs. Render made several calls to 911, telling dispatchers that Head was destroying property and that Render was in need of assistance. The complaint states that Head could be heard in the background during the 911 calls screaming at Render to leave the residence. The complaint further states that the sisters came into physical contact when a bookcase fell to the floor, along with Render and Head. Render was up on top of Head and Head was on her stomach. Render pinned Head down with her knee, had one hand on the back of Head's head and one hand on Head's upper back/shoulder area, telling Head that she would remain pinned down until police arrived. By the time police arrived, however, Head was unresponsive. Render told police that the apartment was dark, she did not believe she was holding Head's neck down and obstructing her airways, and she feared letting Head go would result in a continued physical fight. The medical examiner determined that Head died as a result of manual strangulation and ruled her death a homicide.
¶3 The matter proceeded to trial, where Render maintained that she and Head got into an altercation and that Render was trying to subdue Head until police arrived. Render detailed the altercation with her sister, telling the jury that she was upset with Head because Head flirted with someone Render was interested in earlier that evening while the two were drinking at a bar. Render left the bar early, came back to the apartment that the two shared, and moved some of her belongings into the living room to suggest that she was going to move out.
¶4 Render stated that when Head returned to the apartment and found Render's belongings in the living room, she began yelling at Render to "get the fuck out." Head then started throwing or kicking Render's belongings down the stairs while screaming at Render to leave. Render made several phone calls to police while Head continued to yell and throw things. Render testified that Head's behavior was uncharacteristic and that she was worried about Head, so she kept calling 911. Render stated that while Head continued to yell, a mirror fell to the ground and shattered. Head then made her way over to a bookshelf and tried to push it to the ground. Render tried to prevent the bookshelf from falling by pushing it up while Head tried to push it down, leading both sisters and the bookshelf to fall. Render stated that Head fell face down and Render landed on top of Head. Render testified that Head was wearing a hoodie which Render "grabbed," then Render pinned Head's shoulders down and told Head " '[y]ou not going nowhere until the police come.' " Render testified that she straddled Head and pushed her head down so that she could not get up. Render told the jury multiple times that she did not realize she might have been injuring her sister, she was simply trying to subdue Head until the police arrived. Render stated that when police arrived and Head was not moving, Render thought it was because Head was "drunk" and "just playing."
¶5 Dr. Wieslawa Tlomak, the medical examiner who performed Head's autopsy, told the jury that Head died as a result of "asphyxia due to manual strangulation and a compression of her chest." Dr. Tlomak concluded that the manner of Head's death was "homicide." Dr. Tlomak testified that Head had hemorrhages in both eyes, consistent with an obstruction of the blood vessels that supply blood to the eyes. Dr. Tlomak stated that such hemorrhages "can be seen at any time when there's increase in blood pressure ... for example, if someone is vomiting or coughing, or it can be seen when there's pressure applied to the neck." Dr. Tlomak stated that additional factors suggest that Head's hemorrhages were caused by pressure applied to her neck, including "three subcutaneous hemorrhages in the skin of the neck ... [and] it appears of hemorrhages in the muscles of the neck." Dr. Tlomak concluded:
[i]n this case there was a compression of the neck which occluded blood vessels, so the brain didn't receive enough oxygen. If the compression is had for about 10, 15 seconds, the person will become unconscious and then will die ... in this case there was a history, but another person was sitting on the chest of Ms. Sheri Head, so that's why I determined that the cause of death was asphyxia due to manual strangulation and compression of the chest because both contributed to lack of oxygen in the brain.
(Some formatting altered.)
¶6 The jury found Render guilty as charged. On the second-degree reckless homicide charge, Render was sentenced to twenty-two years of imprisonment, bifurcated as twelve years of initial confinement and ten years of extended supervision. On the strangulation/suffocation charge, Render was sentenced to six years imprisonment, bifurcated as three years of initial confinement and three years of extended supervision. The sentences were to run concurrent to each other.
¶7 Render filed a postconviction motion for relief arguing that she was entitled to a new trial on the basis of ineffective assistance of counsel. Specifically, Render argued that her trial counsel was ineffective for failing to consult with an independent forensic pathologist to review the medical evidence of Head's death. Render attached a report from Dr. Shaku Teas, a forensic pathologist who reviewed the medical evidence and determined that Head most likely died from a sudden cardiac arrest associated with the stress of the altercation and the physical activity involved with throwing various items. The medical report also detailed Head's medical history, noting that Head had numerous medical issues which could have led to a sudden death, including hypertension with an enlarged heart with fibrosis, arterionephrosclerosis of the kidney,[3] and early cardiac cirrhosis. The report further noted that: (1) there was no evidence of any external marks or pressure on Head's neck to suggest that Head was manually strangled; (2) the eye hemorrhages were sparse; (3) there was no evidence of any trauma to the torso, chest, or back to suggest that compression of the chest lead to asphyxia and death; (4) there were no laryngeal petechiae[4] or fractures of the hyoid bone or thyroid cartilage; and (5) Head's behavior as described by her sister, the resulting stress on Head's body, and the presence of ethanol and marijuana in Head's system may have contributed to her death. In short, Dr. Teas's report concluded that Head most likely died from a sudden cardiac arrest stemming from stress, pre-existing conditions, and the presence of ethanol and marijuana in her system.
¶8 The postconviction court denied Render's motion, finding Head's cause of death irrelevant because the jury was to determine whether Render's actions constituted or created a substantial and unreasonable risk of death or great bodily harm. The court also found that it was not reasonably probable that the jury would have found Dr. Teas more credible than Dr. Tlomak. This appeal follows.
DISCUSSION
¶9 Whether counsel rendered ineffective assistance is a mixed question of fact and law. See State v. Nielsen , 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We uphold the trial court's findings of fact unless they are clearly erroneous. See id. However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. See id.
¶10 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." Id. at 690. To demonstrate prejudice, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a defendant fails to make a sufficient showing on one prong of the Strickland test, we need not address the other. See id. at 697.
¶11 It is a prerequisite to appellate review of an ineffective assistance claim that the challenged attorney explain his or her actions at a postconviction evidentiary hearing. See State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). The postconviction court must hold a Machner hearing if the defendant's motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." State v. Allen , 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the defendant's motion meets this standard is a question of law that we review independently. See id. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the postconviction court has the discretion to deny the defendant's motion without a hearing. Id.
¶12 The question before us is whether Render has alleged sufficient material facts which, if true, would entitle her to an evidentiary hearing on whether trial counsel's performance was deficient and whether Render was prejudiced thereby. See Allen , 274 Wis. 2d 568, ¶9. We conclude Dr. Teas's opinion, taken as true for purposes of evaluating whether Render has presented sufficient material facts to require a Machner hearing, supports Render's argument that Dr. Tlomak's testimony was not conclusive and given the emphasis that the State placed upon it at trial, Dr. Teas's opinion may have changed the result. See Bentley , 201 Wis. 2d at 310.
¶13 Throughout the trial, Render maintained that she was unaware of the possibility of causing injury to her sister-she stated that she was simply trying to subdue her sister until police arrived. Render described Head's behavior as drunken, angry, physical, and uncharacteristic. Render described in detail the verbal altercation, as well as Head's physical state of agitation in which Head was throwing and kicking Render's property and trying to push a bookshelf to the ground. Render also described the fall that both sisters took while struggling over the bookshelf. Render testified that Head was engaged in extremely physical activity while clearly distressed. Render also testified that she had no intent to injure her sister.
¶14 Render's postconviction motion meets "the five 'w's' and one 'h' " test explained in Allen . See id. , 274 Wis. 2d 568, ¶23. That is, "who, what, where, when, why, and how." See id. A motion provides sufficient material facts if it provides the name of the witness (the who), the reason the witness is important (the why and how), and the facts that can be proven (the what, where, and when). See id. , ¶24. The Allen test is satisfied as follows: (1) the "who" is Dr. Teas; (2) the "what," "where" and "when" are that Head was yelling, throwing things, and attempting to push over a bookshelf, causing Render to restrain Head and call 911; and (3) the "why" and "how" are that Dr. Teas's opinion could have been used to establish that Head could have died from sudden cardiac arrest as a result of multiple pre-existing conditions, stress, and the presence of alcohol and marijuana in her system. The report also contradicts the conclusion of strangulation or suffocation, noting the lack of trauma to the relevant portions of Head's body necessary to cause either injury.
¶15 Contrary to the postconviction court's legal conclusion, we conclude that the cause of Head's death was relevant and material to the case. Based on the facts Render presents, which we must take as true, she is entitled to an evidentiary hearing to address her ineffective assistance of counsel claim on both the issues of deficiency and prejudice.[5] See id.
¶16 For the forgoing reasons, we reverse the postconviction order.
By the Court. -Order reversed and cause remanded with directions.
Not recommended for publication in the official reports.

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

The Honorable Stephanie Rothstein presided over trial and entered the judgment of conviction. The Honorable Mark A. Sanders entered the order denying Render's postconviction motion.

Nephrosclerosis is defined as: "[a] progressive disease of the kidneys that results from sclerosis (hardening) of the small blood vessels in the kidneys. Nephrosclerosis is most commonly associated with hypertension or diabetes and can lead to kidney failure." See https://www.medicinenet.com/script/main/art.asp?articlekey=4533 (last visited July 12, 2018).

"Petechiae" is essentially bleeding resulting from broken blood vessels. See https://www.medicinenet.com/script/main/art.asp?articlekey=4853 (last visited July 12, 2018).

We are not finding that trial counsel's performance was deficient or that Render suffered any prejudice. That is the purpose of the Machner hearing. We conclude that Render alleged sufficient facts to entitle her to a Machner hearing.