PER CURIAM.
¶1 Huandra Murray appeals a judgment of conviction and an order denying postconviction relief. Murray argues his trial attorney was ineffective by failing to strike a prospective juror who raised concerns regarding personal security during voir dire, by failing to request a new jury pool, and by failing to object when the jury was impaneled. Murray also argues the circuit court erroneously exercised its discretion by failing to adequately investigate whether the prospective juror in question was biased and whether his comments tainted the jury pool. We reject Murray's arguments and affirm.
BACKGROUND
¶2 A second amended Information charged Murray with one count each of possession with intent to deliver tetrahydrocannabinols (THC), possession of THC, and possession of drug paraphernalia. A two-day jury trial on those counts took place in September 2014. Murray was represented at trial by attorney Brian Van Ells.
¶3 At the end of voir dire, one of the prospective jurors-Juror 19-told the circuit court, "I'm worried about my personal safety on this." The court inquired further, stating, "I don't believe that there's any issue with respect to that in terms-you're concerned that, participating as a juror, that somehow that would call into question your safety?" Juror 19 replied, "Well ... say he got convicted, does he hold a grudge against the jurors and say whatever malice and comes back after us?" The court responded, "That's always a good question. I suppose it's true in every trial, but it's certainly my observation that that's not really the case."
¶4 The circuit court continued by explaining that the role of the jury is to be a "neutral party" and "decide whether or not the state has met its burden by looking at the facts as you find them and applying the law to that." The court then stated:
I've not ever had occasion to-in any occasion I preside over, even am familiar with as a lawyer or as a judge, in which I have had the defendants concerned about that, and so I think I can tell you that you have nothing to be concerned about because I think history, especially here in this county, would suggest that that's the case, and so I don't want to say anything beyond that other than that if you ever had a concern for your role in this process, and you're selected in this, you would always be able to contact me and you would always be able to be assured of any resources that would be necessary to make sure that nothing inappropriate occurred by virtue of your service here.
So we never had occasion to do that, but we're always ready, willing, and able if that occasion should come about.
¶5 The circuit court continued, "There's nothing I know about this case in particular that would even suggest or hint that that [i.e., the jurors' personal safety] would even be a remote concern." Finally, the court stated, "[W]e've not had any problems and I wouldn't expect any in this case or others, but ... if you are selected and you ever have any concerns, you would always have access to me and ... I'd ensure that you have access to whatever other resources that you require."
¶6 Immediately thereafter, the parties selected the jury panel, and Juror 19 was one of the individuals chosen to serve on Murray's jury. After the circuit court read the jurors' names aloud, it asked the parties, "[I]s this the panel that you've selected?" Both the prosecutor and Van Ells responded in the affirmative. The jury ultimately found Murray guilty of all three of the charged offenses.
¶7 Following sentencing, Murray's appointed postconviction attorney filed a no-merit report, which this court rejected. Postconviction counsel then filed a motion for postconviction relief, asserting Van Ells was ineffective by failing to use a peremptory strike on Juror 19, by failing to request a new jury pool, and by failing to object when the jury was impaneled. The motion also asserted that the circuit court "should have conducted a further inquiry" regarding potential bias after Juror 19 raised personal safety concerns during voir dire.
¶8 The circuit court held a Machner[1] hearing, during which Murray testified he had expressly told Van Ells that he did not want Juror 19 on his jury. Murray further testified that when Juror 19 was ultimately included in the jury panel, Van Ells told Murray he had "struck the wrong juror." However, Murray conceded he did not alert the circuit court to any concern regarding the jury panel.
¶9 Van Ells testified he did not recall Murray stating he did not want Juror 19 on his jury. Van Ells further testified that had Murray done so, he would have used a peremptory strike on Juror 19. Van Ells also testified that had Murray informed him Juror 19 had been impaneled due to Van Ells' error, against Murray's wishes, he would have brought that issue to the circuit court's attention.
¶10 The circuit court issued a written decision denying Murray's postconviction motion. The court rejected Murray's assertion that he specifically asked Van Ells to strike Juror 19, implicitly finding Van Ells' testimony more credible than Murray's. The court also concluded that Juror 19 was not subjectively or objectively biased and that Juror 19's comments during voir dire did not taint the jury pool. The court therefore concluded Van Ells was not ineffective by failing to strike Juror 19, request a new jury pool, or object when the jury was impaneled. In addition, the court noted that, because Juror 19's comments during voir dire did not evidence any bias, there was no need for "more in-depth questioning" regarding that issue.
¶11 Murray now appeals, renewing his claims that his trial counsel provided ineffective assistance and that the circuit court erroneously exercised its discretion by failing to adequately investigate whether Juror 19 was biased.
DISCUSSION
I. Ineffective assistance
¶12 Whether an attorney rendered ineffective assistance is a mixed question of fact and law. State v. Nielsen , 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's findings of fact unless they are clearly erroneous. Id. However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. Id.
¶13 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." Id. at 690. To demonstrate prejudice, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a defendant fails to make a sufficient showing on one prong of the Strickland test, we need not address the other. Id. at 697.
¶14 Here, Murray claims he specifically told Van Ells that he did not want Juror 19 on his jury, and Van Ells assured him Juror 19 would not be on the jury panel. He therefore asserts Van Ells was ineffective by failing to use a peremptory strike on Juror 19.[2] He further contends that when Juror 19 was ultimately selected to serve on his jury, Van Ells admitted he had "struck the wrong juror." He argues that once Van Ells realized his error, he should have attempted to correct it by objecting when the jury was impaneled.
¶15 Murray has failed to establish that Van Ells performed deficiently by failing to use a peremptory strike on Juror 19 or object when the jury was impaneled. The circuit court rejected Murray's claim that he told Van Ells he did not want Juror 19 on his jury, and Murray has not shown that the court's finding in that regard was clearly erroneous. Van Ells testified at the Machner hearing that he did not recall Murray stating he did not want Juror 19 on the jury panel, but had Murray made that request, Van Ells would have struck Juror 19. Van Ells also testified that had Murray informed him Juror 19 had been erroneously impaneled against Murray's wishes, he would have brought that issue to the circuit court's attention. The circuit court implicitly found Van Ells' testimony more credible than Murray's contrary testimony. "When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." State v. Peppertree Resort Villas, Inc. , 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.
¶16 Other evidence in the record also supports the circuit court's finding that Murray did not ask Van Ells to strike Juror 19. After the parties used their peremptory strikes, the court named the thirteen selected jurors and asked both the prosecutor and Van Ells, "[I]s this the panel that you've selected?" Van Ells responded in the affirmative, and Murray did not alert the court to any concern about Juror 19's presence on the jury.
¶17 Shortly thereafter, outside the jury's presence, the circuit court and the parties engaged in further discussion about Juror 19's comments during voir dire. During that discussion, the court stated it planned to inform Juror 19 that if he was concerned for his safety the bailiff could escort him to and from his vehicle. Both parties stated they had no objection to that procedure. As the court noted in its decision denying postconviction relief, that discussion "provided both [Van Ells] and Murray the ideal opportunity to either alert the Court to the alleged mistake or raise any concerns about [Juror 19's] ability to serve." Neither Van Ells nor Murray raised any concern at that time. Murray also had an opportunity to raise concerns about Juror 19 after the jury returned its verdict, when the court asked him whether he wanted the jury polled. Instead of doing so, Murray declined the court's offer to poll the jury, stating, "I respect their opinion. I mean, they were-they did their job."
¶18 In its decision denying postconviction relief, the circuit court reasoned:
There was ample opportunity for both [Van Ells] and Murray to alert the Court to an improperly empaneled juror or to address any concerns about [Juror 19], if these were genuine issues at the time. This fact, coupled with [Van Ells'] testimony that he would have done exactly this if he had made such an error, leads the Court to conclude that [Juror 19] was not improperly empaneled against Murray's wishes. As such, the Court finds [Van Ells] did not perform deficiently.
We agree with the circuit court's analysis. The most logical reason that neither Murray nor Van Ells informed the court of any error pertaining to Juror 19's presence on the jury is that there was no error. Under these circumstances, Van Ells did not perform deficiently by failing to strike Juror 19 or object when the jury was impaneled.
¶19 We also reject Murray's claim that Van Ells was ineffective by failing to request a new jury pool. Murray emphasizes that Juror 19 "expressed concerns about his personal safety in front of the entire jury panel." He contends Juror 19's comments may have affected the other prospective jurors' views of the case, thereby tainting the jury pool.
¶20 This argument is purely speculative. Murray cites no evidence to support his claim that Juror 19's comments had any effect on the other jurors. Moreover, the circuit court expressly found to the contrary, stating:
It is the Court's observation that [Juror 19's] question did not cause any noticeable effect on the jury pool. No one else raised a similar concern or had any follow up questions after the Court responded. The jury ultimately empaneled answered affirmatively to the jury oath. Therefore, it is the Court's determination that [Juror 19's] question did not taint the jury pool.
Murray does not address the court's findings in this regard and has therefore conceded their validity. See Schlieper v. DNR , 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). Accordingly, he has not established that Van Ells performed deficiently by failing to request a new jury pool. See State v. Sanders , 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16 ("Counsel does not perform deficiently by failing to bring a meritless motion.").
II. Investigation regarding Juror 19's potential bias
¶21 Murray next argues the circuit court erred by failing to adequately investigate whether Juror 19 was biased. Both the state and federal constitutions grant criminal defendants the right to be tried by an impartial jury. See State v. Faucher , 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). "[D]ue process requires the trial judge, if he [or she] becomes aware of a possible source of bias, to 'determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial.' " Oswald v. Bertrand , 374 F.3d 475, 477-78 (7th Cir. 2004) (quoting Remmer v. United States , 347 U.S. 227, 230 (1954) ). In other words, when an issue of jury bias arises during voir dire, "it is the trial judge's responsibility to conduct an adequate investigation." Id. at 484 (emphasis omitted). The adequacy of the court's investigation "is a function of the probability of bias; the greater that probability, the more searching the inquiry needed to make reasonably sure that an unbiased jury is impaneled." Id. at 480.
¶22 The parties agree that we should review the adequacy of the circuit court's investigation into possible juror bias in this case for an erroneous exercise of discretion. See Skilling v. United States , 561 U.S. 358, 386 (2010) (stating jury selection is particularly within the province of the trial judge). Murray argues the court erroneously exercised its discretion because after Juror 19 raised concerns regarding his personal safety, the court failed to "ascertain whether this bias might be prejudicial to [Murray] or the extent of the impact of these statements on the other jurors." The flaw in Murray's argument, however, is that he assumes Juror 19's comments demonstrated bias. To the contrary, the circuit court expressly determined there was no indication that Juror 19 was either subjectively or objectively biased.
¶23 Subjective bias exists when a juror has expressed or formed an opinion about the case before hearing the evidence. State v. Funk , 2011 WI 62, ¶37, 335 Wis. 2d 369, 799 N.W.2d 421. The inquiry focuses on the individual juror's state of mind, id. , and turns on his or her responses during voir dire and the circuit court's assessment of the juror's honesty and credibility, Faucher , 227 Wis. 2d at 718. We will uphold a circuit court's factual finding that a prospective juror was or was not subjectively biased unless that finding is clearly erroneous. Id.
¶24 In this case, the record supports the circuit court's finding that Juror 19 was not subjectively biased. Although Juror 19 initially raised a general concern about his own safety-stating, "I'm worried about my personal safety on this"-when questioned further, it became apparent that he merely had a hypothetical question about what might happen if the jury found Murray guilty. In its postconviction decision, the court observed that it had responded to Juror 19's hypothetical question, and "had this been a genuine concern of [Juror 19], he would have persisted with this line of questioning." The court further found there was nothing about Juror 19's demeanor that indicated he could not be impartial. On these facts, the court's finding that Juror 19 was not subjectively biased is not clearly erroneous. Nothing about Juror 19's comments suggested he had already formed an opinion regarding Murray's guilt. Moreover, Murray does not develop any argument challenging the circuit court's determination regarding subjective bias.
¶25 Unlike subjective bias, which focuses on the individual juror's state of mind, objective bias inquires whether a reasonable person in the prospective juror's position could be impartial. Id. Whether a juror was objectively biased is a mixed question of fact and law. Id. at 720. We will uphold the circuit court's findings of fact unless they are clearly erroneous. Id. Whether those findings fulfill the legal standard of objective bias is a question of law, but because that legal question is intertwined with the circuit court's factual findings, we "give weight" to the court's conclusion regarding the existence of objective bias. Id. We will reverse "only if as a matter of law a reasonable judge could not have reached such a conclusion." Id. at 731-32.
¶26 In concluding Juror 19 was not objectively biased, the circuit court again noted that Juror 19's comments merely indicated a general, hypothetical concern about the jurors' personal safety. The court further observed that, in response, it had reassured the entire jury pool that violence against jurors was not generally a concern and that the court had no reason to believe it would be a concern in Murray's case, which did not include any allegations of violence on Murray's part. Based on "the nature of the case, the hypothetical nature of the question, and the Court's reassurances," the court concluded a reasonable person in Juror 19's position "would have remained unbiased." The court's factual findings are not clearly erroneous, and based on those findings, a reasonable judge could conclude Juror 19 was not objectively biased. Furthermore, Murray does not develop any argument challenging the court's conclusion regarding objective bias. He does not explain why he believes a reasonable person in Juror 19's position would have been unable to remain impartial, simply because he or she raised a hypothetical concern about the jurors' personal safety if Murray were convicted.
¶27 Murray also fails to meaningfully address the circuit court's conclusion that Juror 19's comments during voir dire did not taint the jury pool. As noted above, the court found that those comments had no "noticeable effect on the jury pool," that no other prospective juror raised any similar concerns or follow-up questions after the court responded to Juror 19's comments, and that the jurors who were ultimately selected to serve on the jury "answered affirmatively to the jury oath." The court noted it had "spent a substantial amount of time" addressing Juror 19's concerns and concluded that, "given the type of case and the Court's response," a reasonable jury pool "would have remained unbiased." The court's conclusion that Juror 19's comments did not taint the jury pool was reasonable, under the circumstances.
¶28 Because the circuit court reasonably concluded that Juror 19's comments during voir dire did not evidence either subjective or objective bias and did not taint the jury pool, the court did not erroneously exercise its discretion by failing to conduct any further investigation regarding those comments or their effect on the other prospective jurors. Where the probability of juror bias is low, the circuit court need not conduct an extensive investigation regarding that issue. See Oswald , 374 F.3d at 480.
¶29 In support of his argument that additional investigation was required, Murray relies heavily upon Oswald . However, that case is distinguishable. Oswald was a high-profile case involving a crime spree in Waukesha County during which a police officer was shot and killed. Id. at 478. The case had garnered significant publicity in Waukesha County, which created difficulty in selecting a jury. Id. at 478-79.
¶30 During voir dire, one prospective juror informed the circuit court that he had heard about the case from other prospective jurors while waiting in the jury room, and "[a]ccording to what I hear, the young man [Oswald] is guilty of what he is being accused of and things like that and everything and I just think it's a waste of time [to have a trial]." Id. at 479. The court refused to allow Oswald's attorney to question the juror further or to recall for further questioning any of the prospective jurors who had already been voir dired. Id. However, the court permitted Oswald's attorney to ask the three remaining jurors who had not yet been voir dired about the discussions in the jury room. Id. One of those individuals confirmed that the jurors had been discussing the case. Id.
¶31 In addition, a different prospective juror wrote a letter to the circuit court stating he would "more than likely be so concerned about [his] work that [he would] not give in trial all the attention it should receive to the point that [he] might just vote either way just to end it." Id. at 480. That juror subsequently had two "outburst[s]" in front of the other jurors, during which he asked to speak to the circuit court and criticized the court for failing to respond to his letter. Id. The court refused Oswald's attorney's request to question the juror further. Id. The court received-and denied-four requests from other prospective jurors who stated they did not want to serve on Oswald's jury. Id.
¶32 On appeal, the Seventh Circuit concluded the circuit court had erred by failing to conduct an adequate investigation into potential juror bias. Id. at 481. The court stated the circumstances demonstrated a "high probability that some, maybe all, of the jurors who tried Oswald were biased." Id. at 480. It reasoned:
The response to the jury questionnaires against the background of enormous publicity concerning the most sensational criminal episode in the county's history, the fact that Oswald seemed so obviously guilty as to make the necessity for a trial questionable to a layperson, the tumult induced by [the second juror's] vocal complaints, the flagrant disobedience of the judge's instructions that the prospective jurors not discuss the case in advance of the trial, the likelihood that [the second juror] and perhaps other reluctant jurors would vote to convict regardless of their actual views if that would make the trial end quicker, the fact that, at least according to [the first juror], the improper discussions had already produced a consensus that Oswald was guilty as charged-these things, taken not separately but together, created a sufficiently high probability of jury bias to require on the part of the trial judge a diligent inquiry.
Id. at 480-81.
¶33 Here, in contrast, there was no indication that Juror 19-or any other prospective juror-had formed an opinion about Murray's guilt prior to trial. In addition, there was nothing to suggest that the prospective jurors had been discussing the case amongst themselves in violation of the circuit court's instructions. Moreover, there was no suggestion that any prospective juror might vote to convict Murray, regardless of the evidence, simply to hasten the end of trial. Finally, there is nothing in the record to suggest that Murray's case involved the level of pretrial publicity that was present in Oswald . The circumstances that warranted additional investigation into potential juror bias in that case are therefore absent here. As such, we reject Murray's argument that the circuit court erroneously exercised its discretion by failing to conduct additional investigation into potential juror bias in response to Juror 19's comments during voir dire.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Murray does not develop any argument that even if he did not ask Van Ells to strike Juror 19, Van Ells was nonetheless obligated to do so because Juror 19's comments during voir dire unequivocally demonstrated that he was biased against Murray. We will not abandon our neutrality to develop that argument for Murray. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82. Moreover, as discussed below, Juror 19's comments did not indicate that he was either subjectively or objectively biased.