COURT OF APPEALS
DECISION
DATED AND FILED

February 11, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2410-CR**

Cir. Ct. No. **2017CT55**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JACQUELINE A. ZIRIAX ANDERSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

¶1 STARK, P.J.[1] Jacqueline Ziriax Anderson appeals a judgment convicting her of second-offense operating a motor vehicle while intoxicated (OWI) and an order denying her postconviction motion for plea withdrawal. Ziriax Anderson argues law enforcement lacked reasonable suspicion to stop her vehicle,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

and the circuit court therefore erred by denying her suppression motion. She also argues the court should have granted her motion to withdraw her no-contest plea because her trial attorney was ineffective. We reject these arguments and affirm.

**BACKGROUND**

¶2 Following a traffic stop, Ziriax Anderson was charged with second-offense OWI and second-offense operating a motor vehicle with a prohibited alcohol concentration. She subsequently moved to suppress all evidence obtained as a result of the traffic stop on the grounds that the officer lacked reasonable suspicion to stop her vehicle.

¶3 At the suppression hearing, City of Hudson police officer Daniel Jents testified he was on routine patrol at the intersection of Vine and Second Streets in Hudson at around 2:25 a.m. on January 14, 2017. Traffic on Vine Street was controlled by a flashing red light, and traffic on Second Street was controlled by a flashing yellow light. While Jents' vehicle was stopped on Vine Street facing west, he saw a semi approaching the intersection on Second Street. He also saw a black sedan—whose driver was later identified as Ziriax Anderson—across the intersection from him on Vine Street, facing east. The sedan "stopped momentarily" and then "began to proceed through the intersection … basically forcing the semi to yield" to the sedan. Jents testified the semi, which had the right-of-way, "slowed and came to a complete stop because [the sedan] had pulled into the intersection."

¶4 Jents then drove around the block and encountered the black sedan again at the intersection of Vine and Third Streets. After Jents turned back onto Vine Street, he observed that the sedan "was … over the centerline in the opposite lane of traffic for approximately about a block." He testified he knew the sedan was in the oncoming lane of traffic because he "could see the tire was over the centerline,

the snow markings, and there was a great enough distance from the passenger's side of the vehicle for the curb." The sedan eventually returned to the correct lane of travel and turned off of Vine Street, at which point Jents initiated a traffic stop. Jents testified he stopped the sedan based on its failure to yield the right-of-way to the semi and its operation in the wrong lane of traffic.

¶5     On cross-examination, defense counsel questioned Jents about his report, which stated the sedan had merely forced the semi to "slow its travel," rather than stop. Jents testified that was incorrect, and he meant to write that the semi was forced to come to a complete stop.

¶6     Jents also conceded on cross-examination that Vine Street was partially snow-covered on the night in question. On redirect examination, however, he testified he could tell that Ziriax Anderson's vehicle had crossed the centerline because "there's the snow-covered area of the center lane. There's tire tracks on both sides that are down to pavement and [it is] easy enough to observe when a vehicle is over that snow-packed center lane."

¶7     The circuit court denied Ziriax Anderson's suppression motion, concluding Jents had reasonable suspicion to stop her vehicle because he had seen her commit two traffic violations: failure to yield the right-of-way to the semi and operation of her vehicle over the centerline. With respect to the second violation, the court acknowledged that the road was partially snow-covered, but it stated "that doesn't mean that the officer cannot perceive where that centerline is." The court credited Jents' testimony that "the tire tracks had formed a center of snow," which allowed Jents to identify the location of the centerline even though "the actual centerline may have been obscured by snow."

¶8    On September 27, 2017—approximately two and one-half months after the suppression hearing—Jents was involved in an incident concerning his department-issued handgun and was subsequently ordered to undergo a psychological fitness for duty evaluation. On November 14, 2017, Jents resigned from his employment with the City of Hudson Police Department in lieu of termination.

¶9    At a final pretrial hearing on March 28, 2018, the State proposed a plea agreement, pursuant to which Ziriax Anderson would plead guilty or no contest to second-offense OWI, and in exchange the State would recommend the statutory minimum sentence on that count. The hearing was continued to April 3, 2018, to give Ziriax Anderson additional time to consider the State's offer. Ziriax Anderson subsequently agreed to accept the offer, and the April 3 hearing was converted to a plea and sentencing hearing.

¶10    On April 3, after defense counsel had reviewed the plea questionnaire with Ziriax Anderson, but before the plea and sentencing hearing began, the circuit court called the parties' attorneys into chambers to discuss the plea agreement. During that discussion, Ziriax Anderson's attorney learned for the first time that the State had proposed the plea agreement because Jents "no longer worked for the police department" and was "having some mental health issues." The assistant district attorney explained that although Jents "was available to be called as a witness, [the State] wished not to do so if a plea agreement was possible."

¶11    After their meeting in chambers, the circuit court and the attorneys returned to the courtroom to begin the plea and sentencing hearing. Defense counsel did not tell Ziriax Anderson that the State had made its plea offer because it wanted to avoid calling Jents to testify at trial due to the termination of his employment and

his mental health issues. During the hearing, the court accepted Ziriax Anderson's no-contest plea to the second-offense OWI count. The court proceeded to sentencing immediately thereafter. The assistant district attorney mentioned during her sentencing argument that the State had "run into some witness issues." After the hearing, Ziriax Anderson asked her attorney about that remark, and she then learned for the first time about Jents' resignation and mental health issues.

¶12 Ziriax Anderson, represented by new counsel, subsequently filed a postconviction motion to withdraw her no-contest plea. She argued her plea was not knowing and voluntary because her trial attorney had failed to inform her before she entered her plea that the State modified its plea offer because it was having "witness problems" due to Jents' resignation and mental health issues. She asserted that, had that information been disclosed to her, "she never would have accepted the offer and would have proceeded to [t]rial."

¶13 The circuit court denied Ziriax Anderson's plea withdrawal motion, following an evidentiary hearing. The court concluded that Ziriax Anderson's trial attorney had performed deficiently by failing to inform Ziriax Anderson of the reason for the State's plea offer—i.e., the State's preference not to call Jents as a witness given his resignation and mental health issues. Nevertheless, the court concluded counsel's deficient performance did not prejudice Ziriax Anderson.

¶14 In support of that conclusion, the circuit court observed that although Ziriax Anderson had testified she would not have pled no contest had she known that Jents was unavailable to testify at trial, the evidence showed that he *was* available to testify, but the State simply preferred not to call him as a witness. The court also reasoned there was nothing "objectively prejudicial" about Ziriax Anderson's ignorance of Jents' employment status and mental health issues, as

those matters did not "involve the elements of the crime or the State's ability to prove them," nor were they relevant to Jents' credibility regarding what occurred on the night of Ziriax Anderson's arrest.

¶15 The circuit court further stated it could not imagine "any circumstance where this information would have been admitted into evidence" at Ziriax Anderson's trial. The court therefore concluded there was no evidence that Jents' employment status or mental health issues "would have made an acquittal more likely or that it would have altered the risk assessment that was done" by Ziriax Anderson and her attorney regarding whether to accept the State's plea offer. The court also found it "noteworthy" that Ziriax Anderson's "prime objective" in entering a no-contest plea "was to reach the Court of Appeals to continue her challenge of the suppression issue." For all of these reasons, the court denied Ziriax Anderson's plea withdrawal motion, and Ziriax Anderson now appeals.

## DISCUSSION

### I. Motion to suppress

¶16 Ziriax Anderson argues the circuit court erred by denying her suppression motion because Jents lacked reasonable suspicion to stop her vehicle. A traffic stop is constitutionally permissible if the officer has reasonable suspicion that a traffic violation has been or is being committed. *State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143. "The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience." *State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997).

¶17    Whether there was reasonable suspicion for a traffic stop is a question of constitutional fact, to which we apply a two-step standard of review. *State v. Post*, 2007 WI 60, ¶8, 301 Wis. 2d 1, 733 N.W.2d 634.  We uphold the circuit court's findings of historical fact unless they are clearly erroneous, but we independently review the application of those facts to constitutional principles. *Id.*

¶18    Here, Jents' testimony at the suppression hearing established reasonable suspicion that Ziriax Anderson had committed two traffic violations. WISCONSIN STAT. § 346.39(1) provides that when a driver approaches an intersection controlled by a flashing red light, he or she must stop before entering the intersection, and "the right to proceed is subject to the rules applicable after making a stop at a stop sign." WISCONSIN STAT. § 346.46(1), in turn, provides that after stopping at a stop sign a driver must yield the right-of-way to other vehicles that have entered or are approaching the intersection.

¶19    Jents testified that after stopping for the flashing red light that controlled traffic on Vine Street, Ziriax Anderson proceeded into the intersection of Vine and Second Streets, into the path of an oncoming semi.  According to Jents, the semi "slowed and came to a complete stop because [Ziriax Anderson] had pulled into the intersection."  These facts gave rise to reasonable suspicion that Ziriax Anderson violated WIS. STAT. § 346.39(1) by failing to proceed in the manner set forth in WIS. STAT. § 346.46(1) after stopping for a flashing red light.

¶20    Ziriax Anderson argues she did not fail to yield the right-of-way because Jents' report—contrary to his testimony at the suppression hearing—stated the semi merely slowed down, rather than stopped, as a result of Ziriax Anderson entering the intersection.  However, Ziriax Anderson does not cite any legal authority supporting the proposition that a failure to yield the right-of-way occurs

7

only when a vehicle that has the right-of-way is forced to come to a complete stop. Moreover, Jents explained during the suppression hearing that his report was mistaken, and the circuit court clearly credited that explanation. When acting as fact finder, the circuit court is the ultimate arbiter of witnesses' credibility and of the weight to be given to their testimony. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶21 Jents' testimony also established reasonable suspicion that Ziriax Anderson violated WIS. STAT. § 346.05(1), which requires drivers to operate their vehicles "on the right half of the roadway." Jents testified that he saw Ziriax Anderson's vehicle operating "over the centerline in the opposite lane of traffic for approximately about a block." He later clarified that although the road was partially snow covered, he could tell that Ziriax Anderson's vehicle had crossed the centerline because it had crossed over the snow-covered area on the center of the roadway between the tire tracks on either side. The circuit court accepted Jents' testimony that the snow on the road did not prevent him from determining that Ziriax Anderson's vehicle had crossed the centerline. These facts gave rise to reasonable suspicion that Ziriax Anderson violated § 346.05(1).

¶22 Because Jents possessed reasonable suspicion that Ziriax Anderson had committed two traffic violations, his stop of her vehicle was constitutionally permissible. The circuit court therefore properly denied Ziriax Anderson's suppression motion.

## II. Motion for plea withdrawal

¶23 Ziriax Anderson next argues that the circuit court erred by denying her postconviction motion for plea withdrawal. A defendant who seeks to withdraw his or her plea after sentencing must prove by clear and convincing evidence that a

refusal to allow plea withdrawal would result in manifest injustice. *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482. One way a defendant may demonstrate manifest injustice is to establish that he or she received ineffective assistance of counsel. *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44.

¶24 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To prove prejudice, a defendant seeking to withdraw his or her plea must establish a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996). If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *Strickland*, 466 U.S. at 697.

¶25 Whether an attorney rendered ineffective assistance is a mixed question of fact and law. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's findings of fact unless they are clearly erroneous, but whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. *Id.*

¶26 Here, we conclude that even if Ziriax Anderson's trial attorney performed deficiently by failing to inform her before she entered her plea that the State's plea offer was motivated by Jents' resignation and mental health issues, Ziriax Anderson has failed to prove that she was prejudiced by counsel's alleged

9

error. Ziriax Anderson argues the circuit court erred by concluding she was not prejudiced because she "testified that had she known of this information, she would not have entered a [no-contest] plea." However, the court was not required to accept Ziriax Anderson's self-serving testimony to that effect. Again, when acting as fact finder, the circuit court is the ultimate arbiter of witnesses' credibility and of the weight to be given to their testimony. ***Peppertree Resort Villas***, 257 Wis. 2d 421, ¶19.

¶27     In this case, the circuit court acknowledged Ziriax Anderson's testimony that she would not have entered a no-contest plea had she been aware of Jents' resignation and mental health issues. However, the court rejected her testimony to that effect for several reasons. First, the court noted that contrary to Ziriax Anderson's assertion, the record did not show that Jents was unavailable for trial; it merely showed that the State wanted to avoid calling him to testify if possible. Second, the court observed that Jents' resignation and mental health status were not relevant to the elements of the offense, likely would have been inadmissible at trial, and therefore would not have made it more likely that Ziriax Anderson would have been acquitted. Third, the court relied on Ziriax Anderson's testimony that she chose to enter a plea because doing so would allow her to appeal the court's denial of her suppression motion sooner than she could have if she had gone to trial. In light of these factors, the court did not err by rejecting Ziriax Anderson's testimony that she would not have entered a no-contest plea had she known that the State's plea offer was motivated by Jents' resignation and mental health issues.

¶28     Ziriax Anderson also argues she was prejudiced because she "was not given [the] opportunity to see if … Jents was going to be able to testify" at her trial. In making this argument, she insinuates that there was some doubt as to Jents'

availability. The only evidence in the record on this issue, however, indicates that Jents was available to testify at trial, but the State simply preferred not to call him as a witness if possible. Ziriax Anderson cites no evidence supporting a conclusion that Jents may have been unavailable to testify, and she has therefore failed to establish prejudice on that basis.

¶29 Finally, Ziriax Anderson argues she was prejudiced because had she known about Jents' resignation and mental health issues, she would not have entered a plea and would have instead moved to reopen her suppression motion, on the grounds that the new information cast doubt on Jents' credibility and competency during the July 11, 2017 suppression hearing. The suppression hearing, however, took place two and one-half months before the incident that led to Jents' resignation. Ziriax Anderson does not cite any evidence that Jents was not competent at the time of the suppression hearing, and any argument to that effect is therefore purely speculative.

¶30 Moreover, Ziriax Anderson does not explain why a mental health episode that is not connected to the facts of this case and that occurred over two months after the suppression hearing would have affected the circuit court's determination of Jents' credibility during that hearing. In fact, the court expressly stated during its oral ruling denying plea withdrawal that the new information about Jents' employment and mental health did not affect Jents' "believability or his ability to perceive the events" that occurred on the date of Ziriax Anderson's arrest. Ziriax Anderson asserts that if her motion for plea withdrawal had been granted, she "would have brought a further motion to obtain … Jents' medical records and incident report from the September 2017 incident that led to his resignation." She does not explain, however, what prevented her from seeking to obtain and present that information in support of her motion for plea withdrawal.

¶31 Under these circumstances, we agree with the circuit court that Ziriax Anderson has failed to establish that she was prejudiced by her trial attorney's failure to inform her before she entered her plea that the State's plea offer was motivated by Jents' resignation and mental health issues. We therefore affirm the court's decision denying Ziriax Anderson's motion for plea withdrawal.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.