**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 10, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2020AP982**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018TP20**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D. N. B., A PERSON UNDER THE AGE OF 18:

DOUGLAS COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

D. B.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

¶1 STARK, P.J.[1] In this termination of parental rights ("TPR") action, the Douglas County Department of Health and Human Services ("the County") filed a petition to terminate David's parental rights to his son, Dylan,[2] based on two grounds: continuing need of protection or services ("continuing CHIPS"), *see* WIS. STAT. § 48.415(2); and failure to assume parental responsibility, *see* § 48.415(6). The jury found that both grounds existed, and the circuit court subsequently entered a dispositional order terminating David's parental rights. David then filed a motion for postdisposition relief, which the court denied.

¶2 David now appeals, arguing that his trial attorney was constitutionally ineffective by: (1) failing to argue that the application of the amended version of the continuing CHIPS statute, WIS. STAT. § 48.415(2), in the TPR proceedings against David violated David's right to due process; (2) failing to introduce evidence at the grounds trial regarding additional visits that occurred between David and Dylan; and (3) failing to object to testimony during the grounds trial about Dylan's negative reactions to David during certain supervised visits. David also argues the evidence was insufficient to support a finding that he was notified of the potential grounds for termination of his parental rights, as required by § 48.415(2)(a)1., because the notice he received referred to the elements set forth in the prior version of the continuing CHIPS statute, rather than the amended version.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reading, we refer to the parent and child in this confidential matter using pseudonyms, rather than their initials.

¶3  Based on our supreme court's recent decision in *Eau Claire County Department of Human Services v. S.E.*, 2021 WI 56, 397 Wis. 2d 462, 960 N.W.2d 391, we conclude David's attorney was not ineffective by failing to argue that the application of the amended version of the continuing CHIPS statute violated David's right to due process.[3]  We also conclude that even if David's attorney performed deficiently by failing to introduce evidence of the additional visits and by failing to object to testimony about Dylan's negative reactions to David, David has failed to show that those alleged errors prejudiced his defense. Finally, we conclude the evidence was sufficient to establish that David was notified of the potential grounds for termination of his parental rights, as required by WIS. STAT. § 48.415(2)(a)1.  We therefore affirm.

## BACKGROUND

¶4  Dylan was born in November 2015.  He was removed from his parents' care on May 6, 2016, when he was approximately six months old.  About two and one-half weeks later, he was placed in a foster home in Greenwood, Wisconsin.

¶5  On July 22, 2016, Dylan was adjudicated to be a child in need of protection or services ("CHIPS") based on neglect.  The CHIPS dispositional order continued Dylan's placement in the Greenwood foster home and listed conditions that both parents were required to meet in order to have Dylan returned to their care.  The dispositional order further admonished the parents:

---

[3] On January 12, 2021, we placed this appeal on hold pending our supreme court's decision in *Eau Claire County Department of Human Services v. S.E.*, 2021 WI 56, 397 Wis. 2d 462, 960 N.W.2d 391.  That decision was released on June 10, 2021.

> Your parental rights can be terminated against your will under certain circumstances. A list of potential grounds to terminate your parental rights is given below. Those that are check-marked may be most applicable to you, although you should be aware that if any of the others also exist now or in the future, your parental rights can be taken from you.

Below this warning, three grounds for termination were checked: abandonment, continuing CHIPS, and failure to assume parental responsibility.

¶6   At the time the CHIPS dispositional order was entered, the continuing CHIPS ground for termination of an individual's parental rights required the petitioner to prove, among other things, that

> the child has been outside the home for a cumulative total period of 6 months or longer … and that the parent has failed to meet the conditions established for the safe return of the child to the home *and there is a substantial likelihood that the parent will not meet these conditions within the 9-month period following the fact-finding hearing under s. 48.424 [i.e., the hearing to determine whether grounds exist to terminate the parent's parental rights].*

WIS. STAT. § 48.415(2)(a)3. (2015-16) (emphasis added). Consistent with the 2015-16 version of the statute, the summary of the continuing CHIPS ground in the July 22, 2016 dispositional order informed David that his parental rights could be terminated if he failed to meet the conditions for Dylan's return to his home and there was "a substantial likelihood that you will not meet these conditions within the 9-month period following the fact-finding hearing under § 48.424, Wis. Stats."

¶7   WISCONSIN STAT. § 48.415(2)(a)3. was subsequently amended, effective April 6, 2018. *See* 2017 Wis. Act 256, § 1. As relevant here, under the

amended version of the statute, a petitioner seeking to establish the continuing CHIPS ground must prove that

> the child has been placed outside the home for a cumulative total period of 6 months or longer …; that the parent has failed to meet the conditions established for the safe return of the child to the home; *and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months.*

Sec. 48.415(2)(a)3. (emphasis added).

¶8    Thus, the amended version of WIS. STAT. § 48.415(2)(a)3. "reconfigur[ed] the timeframe within which the factfinder may consider the likelihood of the parent meeting the court-ordered conditions." *S.E.*, 397 Wis. 2d 462, ¶19.  The old version of the statute required the factfinder to "look forward nine months from the date of the TPR fact[-]finding hearing to determine whether the parent had a 'substantial likelihood' of meeting the conditions established for the safe return of [the] child," regardless of how much time the child had spent outside the parent's home.  *Id.*, ¶18.  Under the amended version, however, the legislature

> replaced the forward-looking nine-month period with a "15 of the most recent 22 months" timeframe.  Only if the child has been placed outside the home for <u>less</u> than 15 of the most recent 22 months may the factfinder consider whether there "is a substantial likelihood that the parent will not meet [the] conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months."

*Id.*, ¶19.

¶9     On November 30, 2018—over seven months after the amended version of WIS. STAT. § 48.415(2)(a)3. went into effect—the County filed a petition for termination of David's parental rights to Dylan.[4]  At that point, Dylan was nearly three years old and had been placed outside of his parents' homes for approximately two years and six months.  As grounds for the termination of David's parental rights, the TPR petition alleged both continuing CHIPS and failure to assume parental responsibility.  With respect to the continuing CHIPS ground, the petition asserted that the amended version of § 48.415(2)(a)3. applied and that because Dylan had been placed outside the home for more than fifteen months, the County was "not obligated to prove any substantial likelihood that [David] will not meet the Conditions for Safe Return in the future."

¶10    A jury trial in the grounds phase of the TPR proceedings took place on August 26, 2019.[5]  At trial, the jury heard the testimony of Catherine Krause, the initial assessment social worker who was assigned to Dylan's case after he was removed from his parents' care on May 6, 2016.  Krause explained that she typically remains involved in a CHIPS case until a dispositional order is entered, which in this case occurred on June 22, 2016.  Krause testified that during the time she was assigned to Dylan's case, she offered David multiple opportunities to visit Dylan, each of which David refused.

---

[4] The County's petition also sought to terminate Dylan's mother's parental rights. However, the termination of the mother's parental rights is not at issue in this appeal, and we therefore do not address it further.

[5] See *S.E.*, 397 Wis. 2d 462, ¶11 n.9 (explaining that TPR proceedings involve a two-step process comprised of a fact-finding hearing to determine whether grounds exist to terminate the parent's rights, followed by a dispositional hearing during which the circuit court determines whether a termination of the parent's rights is in the child's best interests).

¶11   The jury also heard the testimony of Mia Piikkila, who had previously been employed by the County as a social worker and who was assigned to Dylan's case after Krause.  Piikkila testified that as of September 18, 2018, the County had offered David seventy-six visits with Dylan, but David had kept only thirty-two of those visits.   Stated differently, Piikkila testified that as of September 2018, David had missed fifty-seven percent of his scheduled visits with Dylan.  During its closing argument, the County emphasized David's poor record of keeping his scheduled visits with Dylan, arguing it showed that David had failed to assume parental responsibility.

¶12   The County also presented evidence during the grounds trial regarding Dylan's negative reactions to David during certain supervised visits. Ashley Kantonen, who had previously been employed as a social worker for the County, testified that she supervised a visit between Dylan and David on March 20, 2019.  According to Kantonen, Dylan "was very hesitant on going with [David]" at the beginning of that visit and "was having a really hard time letting go of [his foster mother's] hand."  Kantonen testified that Dylan only let go of his foster mother's hand and went with David after his foster mother promised him that she was going to stay in the same building.  Kantonen also testified that there were "difficulties" during the ensuing visit because Dylan "wanted to go back to [his foster mother]."

¶13   Katlyn Frye, a social services aide employed by the County, testified that she supervised a visit between Dylan and David in October 2018.  Frye testified that at the beginning of that visit, Dylan "did not want to take his father's hand to go back to the room and he was crying and screaming for a brief period." Frye subsequently clarified that Dylan cried and screamed for about half of the one-hour visit.  Frye also testified that during a supervised visit on July 2, 2019,

Dylan "did not want to go to the visit. He had locked the car door several times, refused to unbuckle his seatbelt, and tried running to the front of the van to continue locking doors." According to Frye, that behavior continued for over fifteen minutes.

¶14 The jury ultimately found that the County had established both of the alleged grounds for termination of David's parental rights—continuing CHIPS and failure to assume parental responsibility. Following a dispositional hearing, the circuit court found that the termination of David's parental rights would be in Dylan's best interest, and on October 11, 2019, the court entered an order involuntarily terminating David's parental rights.

¶15 David moved for postdisposition relief, arguing that his trial attorney was ineffective in numerous respects. As relevant to this appeal, David argued his trial attorney was ineffective by failing to argue that application of the amended version of the continuing CHIPS ground to David without proper notice violated David's right to due process; by failing to introduce evidence of additional visits between David and Dylan; and by failing to object to Kantonen's and Frye's testimony about Dylan's negative reactions to David during certain supervised visits.

¶16 The circuit court held a hearing on David's motion, during which David introduced evidence that he had participated in additional visits with Dylan, beyond those described by the County's witnesses during the grounds trial. Specifically, David's mother testified that from Dylan's birth until the day he was removed by the County, he spent eighty percent of his time at her home. She testified that David was "basically living with" her during that time period and provided the majority of Dylan's care. David's mother also testified that between

8

the time Dylan was removed in May 2016 and the summer of 2017, he had at least twelve overnight visits at her home, the longest of which lasted eight or nine days. She testified that David was present and provided care for Dylan during those visits.

¶17 The parties also stipulated during the postdisposition hearing that between February 28, 2019, and August 20, 2019, David had supervised visits with Dylan eleven times and saw him on one additional occasion following a court hearing. The parties further stipulated that David missed two visits without excuse during the month before the grounds trial, but he "did not have any other unexcused absences during that period of time."

¶18 The circuit court denied David's motion for postdisposition relief in an oral ruling, concluding that his trial attorney's performance was neither deficient nor prejudicial. David now appeals.

## DISCUSSION

### I. Ineffective assistance of counsel

¶19 A parent in a TPR action has the right to the effective assistance of counsel. *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. To determine whether a parent received ineffective assistance, we apply the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Nicole W.*, 299 Wis. 2d 637, ¶33.

¶20 To establish ineffective assistance under the *Strickland* test, a parent must demonstrate both that his or her attorney performed deficiently and that the deficient performance prejudiced the parent's defense. *Nicole W.*, 299 Wis. 2d 637, ¶33. To establish deficient performance, the parent must show that counsel's

performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To establish prejudice, the parent must show that there is a reasonable probability—that is, a probability sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's errors. *See id.* at 694. If a parent fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *See id.* at 697.

¶21 Whether an attorney rendered ineffective assistance is a mixed question of fact and law. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* However, whether the facts are sufficient to establish ineffective assistance is a question of law that we review independently. *Id.*

### A. *Failure to object to the application of the amended continuing CHIPS statute*

¶22 As noted above, the CHIPS dispositional order in this case was entered on July 22, 2016, before WIS. STAT. § 48.415(2)—the statute containing the continuing CHIPS ground for termination of parental rights—was amended. In its notice of the potential grounds for termination of David's parental rights, the dispositional order therefore referred to the 2015-16 version of § 48.415(2), which was in effect at the time. As such, the dispositional order informed David that his rights could be terminated under the continuing CHIPS ground if, among other things, the County proved there was a substantial likelihood that David would not meet the conditions for Dylan's safe return to his home "within the 9-month period following the fact-finding hearing" in the grounds phase of a TPR proceeding. *See* WIS. STAT. § 48.415(2)(a)3. (2015-16).

¶23    The continuing CHIPS statute was subsequently amended, however, and the amended version was in effect when the County filed its petition to terminate David's parental rights in November 2018.  In the TPR petition, the County affirmatively alleged that the amended version of the statute applied and that it was therefore not required to prove a substantial likelihood that David would not meet the conditions for Dylan's safe return in the future.  David's trial attorney did not dispute that the amended version of the statute applied.  Moreover, undisputed evidence at the grounds trial established that Dylan had been placed outside of David's home for more than fifteen out of the most recent twenty-two months.  Accordingly, under the amended version of the continuing CHIPS statute, the jury was not asked to determine whether there was a substantial likelihood that David would meet the conditions for Dylan's safe return to his home in the future.  Instead, the jury was simply asked whether David "[h]as … failed to meet the conditions established for the safe return of [Dylan] to his home." *See* WIS. STAT. § 48.415(2)(a)3.  The jury answered that question in the affirmative.

¶24    David now contends his trial attorney was ineffective by failing to argue that the application of the amended continuing CHIPS statute to him violated his right to due process.  However, his argument in that regard is foreclosed by our supreme court's recent decision in *S.E.*

¶25    The facts of *S.E.* are nearly identical to those in this case.  In *S.E.*, Tyler was removed from the care of his mother, Sophie, in June 2016.  *S.E.*, 397 Wis. 2d 462, ¶6.  In August 2016, he was found to be a child in need of protection or services.  *Id.*  The August 2016 CHIPS dispositional order notified Sophie that her parental rights could be terminated and identified continuing CHIPS as a possible ground for termination.  *Id.*, ¶7.  In describing the continuing CHIPS

ground, the dispositional order referred to the elements that existed under the 2015-16 version of WIS. STAT. § 48.415(2). *S.E.*, 397 Wis. 2d 462, ¶7. Thus, the dispositional order informed Sophie that "the factfinder at a TPR trial would need to determine that there was a 'substantial likelihood' [she] would not meet the conditions established for the safe return of the child to the home within the nine-month period following the date of trial." *Id.*

¶26 The continuing CHIPS statute was then amended in April 2018, eliminating "any prospective consideration of the likelihood the parent would meet the conditions for the safe return of the child to the home if the child had already been placed outside the parent's home for at least '15 of the most recent 22 months.'" *Id.*, ¶9. In June 2018, Eau Claire County moved to terminate Sophie's parental rights based on abandonment, and in September 2018, the County amended its petition to add continuing CHIPS as a ground for termination. *Id.*, ¶10. In October 2018, the circuit court entered another CHIPS order, which again identified continuing CHIPS as a potential ground for the termination of Sophie's parental rights, but this time it referenced the elements in the amended version of the continuing CHIPS statute. *Id.*

¶27 Prior to the grounds trial in the TPR proceedings, the parties disputed whether the 2015-16 version of the continuing CHIPS statute or the amended version should apply to Sophie's case. *Id.*, ¶11. The circuit court concluded that the amended version applied, and that the "15 out of 22 months" time frame in the amended statute "began to run in 2016 when Sophie received the original CHIPS order and written notice." *Id.*

¶28 On appeal, Sophie argued that the "15 out of 22 months" time frame in the amended statute began to run "only after [she] received written notice of the

amended version of" the continuing CHIPS statute. *Id.*, ¶13. Our supreme court rejected Sophie's argument, concluding the time frame began to run when Sophie received the original CHIPS dispositional order in 2016, even though that order referred to the nine-month time frame under the prior version of the continuing CHIPS statute. *Id.*, ¶¶20, 41. The court noted that WIS. STAT. § 48.356(1) and (2) "require circuit courts to provide parents with oral and written notice, respectively, of any 'grounds for termination of parental rights under [WIS. STAT. §] 48.415 which may be applicable.'" *S.E.*, 397 Wis. 2d 462, ¶21 (quoting § 48.356(1); emphasis in *S.E.*). The continuing CHIPS ground, in turn, requires the petitioner to prove that the child has been adjudged to be in need of protection or services and has been placed outside the home "pursuant to one or more court orders ... containing the notice required by § 48.356(2)." *S.E.*, 397 Wis. 2d 462, ¶21 (quoting § 48.415(2)(a)1.; emphasis in *S.E.*).

¶29    Based on these statutes, the *S.E.* court held that a circuit court need only provide notice of those grounds that *may be applicable* in a future TPR proceeding. *Id.*, ¶24. "At the time a circuit court places a child outside the home or continues the child's out-of-home placement, the circuit court must give the parent notice of the grounds that may form the basis for a future TPR hearing—at the particular time the notice is given." *Id.* A court is not required to provide notice of grounds that *will be* applicable in a future TPR proceeding, only those that *may be* applicable. *Id.*, ¶25.

¶30    The supreme court therefore rejected Sophie's argument that, in order for the County to initiate TPR proceedings against her based on the amended continuing CHIPS ground, "she would first need to receive TPR warnings, in her CHIPS proceedings, reflecting the amended statutory grounds." *Id.*, ¶26. The court explained:

> In August 2016, after the circuit court found Tyler to be a child in need of protection or services, Sophie received written notice that she could lose her parental rights. The notice identified both the TPR ground "which may be applicable" to Sophie—continuing CHIPS—and its three applicable sub-parts. Sophie's initial CHIPS order referenced the prior version of WIS. STAT. § 48.415(2)(a)3. (2015-16), because that was the version in effect at the time the circuit court gave Sophie the TPR warnings. The CHIPS statute, WIS. STAT. § 48.356, requires only that Sophie receive notice of those TPR grounds "which may be applicable" to her and that is, in fact, the notice she received. Accordingly, the first sub-part of the continuing CHIPS ground for terminating Sophie's parental rights was satisfied because the CHIPS orders "contain[ed] the notice required by s. 48.356(2)" as mandated by § 48.415(2)(a)1.

*S.E.*, 397 Wis. 2d 462, ¶26.

¶31　The supreme court further concluded it was "of no import" that the legislature amended the continuing CHIPS statute in 2018 "because there is no dispute that each time Sophie received TPR warnings, the circuit court orders contained the requisite notice under WIS. STAT. § 48.356(2)—namely, any grounds for termination of parental rights 'which may be applicable' to Sophie at the time the warnings were given." *S.E.*, 397 Wis. 2d 462, ¶27. The court continued:

> Moreover, the statutorily-required warnings contemplate that different grounds may form the basis for a TPR action and the parent is forewarned of this. Sophie's notice needed to identify only the grounds for termination that existed <u>at the time</u> of the initial CHIPS order. Sophie's notice did just that: it included all three sub-parts of continuing CHIPS in effect in 2016—the grounds for termination of her parental rights "which may be applicable" in a future TPR proceeding. The dispositional order underscores the potential for different grounds supporting a future TPR proceeding by cautioning the parent to "be aware that if any of the other[] [grounds] exist now or in the future, your parental rights can be taken from

14

you." Accordingly, Sophie was put on notice that different grounds could support a TPR action against her.

*Id.*

¶32     The supreme court also rejected Sophie's argument that starting the "15 out of 22 months" time frame in 2016 when she received the original CHIPS order referencing the prior version of the continuing CHIPS statute would violate her right to due process. *Id.*, ¶31. First, the court concluded the amended statute had "no retroactive effect as applied to Sophie's case," as it neither created a new obligation nor imposed a new duty with respect to past conduct. *Id.*, ¶35. The court emphasized that, both before and after the amendment, Sophie was on notice that: "(1) her parental rights were at risk if she failed to meet the conditions established for Tyler's safe return to her home, and (2) the [County] was legally obligated to file a TPR petition should she fail to meet those conditions within 15 months of Tyler's out-of-home placement." *Id.*, ¶36.

¶33     Second, the court concluded the application of the amended statute to Sophie did not violate her right to due process by depriving her of her constitutionally protected right to parent her child without "fair notice." *Id.*, ¶37. In support of her argument in that regard, Sophie relied on *State v. Patricia A.P.*, 195 Wis. 2d 855, 537 N.W.2d 47 (Ct. App. 1995), for the proposition that a due process violation occurs "any time a court terminates parental rights for conduct different than the conduct described in the notice." *S.E.*, 397 Wis. 2d 462, ¶37. However, the *S.E.* court explained that *Patricia A.P.* stands for the narrower proposition that the state applies a fundamentally unfair procedure when it warns a parent that his or her rights to a child may be terminated based on the parent's future conduct, but it then substantially changes the *type of conduct* that may lead to the loss of rights without notice to the parent. *S.E.*, 397 Wis. 2d 462, ¶38. The

court reasoned that the 2018 amendment to the continuing CHIPS statute did no such thing, as it did not substantially change the type of conduct leading to the termination of a parent's rights. *Id.*, ¶39. Instead, "[u]nder both the prior and amended versions of the statute, the past conduct of the parent triggering the TPR petition remains the same: the parent has failed to meet the conditions established for the safe return of the child to the home." *Id.*

¶34    *S.E.* defeats David's argument that the application of the amended continuing CHIPS statute in his case violated his right to due process. As in *S.E.*, a CHIPS dispositional order was entered in this case that warned David that his parental rights could be terminated, and that continuing CHIPS was one of the potential grounds for termination. Like the dispositional order in *S.E.*, the dispositional order in this case was entered before the continuing CHIPS statute was amended, and it therefore referenced the elements of the continuing CHIPS ground that existed under the 2015-16 version of the statute. In both cases, TPR petitions were later filed after the continuing CHIPS statute had been amended to include the "15 out of 22 months" time frame. In *S.E.*, the supreme court concluded that applying the amended version of the continuing CHIPS statute to Sophie—and, specifically, beginning the "15 out of 22 months" time frame when Sophie received the original CHIPS dispositional order—was appropriate and did not violate Sophie's right to due process. *S.E.* therefore compels a conclusion that, in this case, the application of the amended continuing CHIPS statute did not violate David's right to due process, even though the CHIPS dispositional order referred to the elements of continuing CHIPS that existed under the prior version of the statute.

¶35    David argues that *S.E.* is distinguishable because "Sophie's CHIPS dispositional order was eventually amended to give her notice of the statutory

change," but in David's case "that amendment never happened." While David is correct that this factual distinction between the two cases exists, we agree with the County that it is a distinction without a difference.

¶36 The supreme court's decision in *S.E.* did not rest on the fact that Sophie's CHIPS dispositional order was eventually amended (after the TPR petition had been filed) to include the elements of the continuing CHIPS ground set forth in the amended version of statute. Instead, the court concluded that the notice provided by the original CHIPS order—which referenced the 2015-16 version of the statute—was sufficient because that order was merely required to notify Sophie of the grounds for termination that "may be applicable" in a future TPR proceeding. *S.E.*, 397 Wis. 2d 462, ¶26. The court further concluded that applying the amended version of the statute to Sophie did not violate her right to due process because the amended statute did not create any new obligation or impose a new duty with respect to past conduct, nor did it substantially change the type of conduct that could lead to the loss of Sophie's parental rights. *Id.*, ¶¶35, 39. Although the court mentioned in passing that Sophie's CHIPS dispositional order had been updated to reference the amended statute after the TPR petition was filed, none of the court's substantive conclusions relied on that fact.

¶37 Under *S.E.*, any argument that the application of the amended continuing CHIPS statute to David violated his right to due process would have been meritless. An attorney is not ineffective for failing to raise a meritless issue. *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit."); *State v. Simpson*, 185 Wis. 2d 772, 784, 519 N.W.2d 662 (Ct. App. 1994) (a defendant is not prejudiced by counsel's failure to make a motion that would have been denied). Accordingly, David's trial

17

attorney was not constitutionally ineffective by failing to argue that the application of the amended continuing CHIPS statute to David violated his right to due process.

### B. Failure to introduce evidence regarding additional visits

¶38    As noted above, David also argues that his trial attorney was ineffective during the grounds trial by failing to introduce evidence regarding additional visits that David had with Dylan, beyond those testified to by the County's witnesses.  We need not address whether counsel performed deficiently in this respect, as we conclude David has failed to establish prejudice.  As explained below, David has failed to show that it is reasonably probable the jury would have reached a different verdict on the continuing CHIPS ground had his attorney introduced evidence about the additional visits.  As such, David has failed to establish a reasonable probability that the result of the TPR proceeding would have been different absent counsel's alleged error.[6]

¶39    In order to establish the continuing CHIPS ground, the County was required to prove three elements: (1) that Dylan was adjudged to be a child in

---

[6] As noted above, the jury found that the County had established two grounds for termination of David's parental rights: continuing CHIPS and failure to assume parental responsibility.  In order to prevail on its TPR petition, however, the County only needed to establish a single ground for termination.  We conclude the alleged errors by David's trial attorney were not prejudicial as to the continuing CHIPS ground.  Later in this opinion, we also reject David's argument that the County's evidence was insufficient to support the jury's verdict on the continuing CHIPS ground.  We therefore need not address whether counsel's alleged errors were prejudicial as to the failure to assume parental responsibility ground.  Even if it were reasonably probable that the jury would have reached a different verdict on the failure to assume parental responsibility ground absent counsel's alleged errors, it is not reasonably probable that the jury would have reached a different verdict on the continuing CHIPS ground.  Thus, it is not reasonably probable that the overall result of the TPR proceeding would have been different absent counsel's alleged errors.

need of protection or services and was placed outside his home for six months or longer pursuant to a court order containing the notice required by WIS. STAT. § 48.356(2); (2) that the County made a reasonable effort to provide the services ordered by the court; and (3) that David failed to meet the conditions established for the safe return of Dylan to his home. *See* WIS. STAT. § 48.415(2)(a); WIS JI—CHILDREN 324 (2021).

¶40     David does not argue that evidence regarding his additional visits with Dylan had any relevance to the first or third elements of the continuing CHIPS ground. As to the second element, however, David argues that if evidence about the additional visits had been introduced at the grounds trial, it is reasonably probable that the jury would not have found that the County made a reasonable effort to provide the services ordered by the court in the CHIPS dispositional order. David asserts that the visits in his mother's home during the early part of Dylan's life ended abruptly after his parents were denied a foster care license, and he then "had far fewer opportunities to care for his son and struggled to take advantage of the ones he had." David claims there was "no evidence in the record that the [County] timed its services or altered them to deal with this change in circumstances."

¶41     David also argues that evidence about the visits that occurred during the six months before trial would have strengthened his case as to whether the County made reasonable efforts by showing that his visit record dramatically improved after he completed residential drug treatment. He contends that the introduction of evidence about those visits would have allowed him to argue that "if [the County] had gotten him into treatment sooner, he would have met [the] conditions [for Dylan's return] sooner."

19

¶42    David's arguments regarding the likelihood of a different result on the reasonable efforts element of the continuing CHIPS ground are speculative and largely undeveloped.[7]    David does not point to any evidence in the record substantiating his assertion that he had fewer opportunities to visit Dylan after his parents' foster care license was denied.    In addition, while David asserts he "struggled to take advantage of" subsequent opportunities for visits, he does not explain why that was the case.  He does not, for instance, cite any evidence that it became more difficult for him, logistically, to participate in visits with Dylan after the visits at his parents' home ceased.  Although David baldly asserts that the County should have "altered" its services after the visits at his parents' home ended, he does not explain what additional or different services he believes the County should have provided, nor does he cite any evidence showing that the County's services during the relevant time period were inadequate.  Moreover, David does not cite any evidence showing that he requested, but was denied, additional visits with Dylan after the visits at his parents' home ended.

¶43    David's argument that the later visits show a lack of the County's reasonable efforts by demonstrating that the County should have gotten him into drug treatment sooner is similarly speculative.  David does not cite any evidence that the County could have, but failed, to get him into drug treatment sooner than it did.  And while David asserts he "specifically objected to the timing of drug treatment" during the grounds trial, the pages of the transcript that he cites do not

---

[7] At the grounds trial, the County bore the burden of establishing each element of the continuing CHIPS ground by clear and convincing evidence.  *See* *S.-G. v. S.-G.*, 194 Wis. 2d 365, 378, 533 N.W.2d 794 (1995).  On appeal, however, it is David's burden to prove that he was prejudiced by counsel's alleged errors.  *See* *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652.

support that assertion. Instead, at the cited pages, Piikkila testified that "pretty early on in the case" she had referred David to Nystrom & Associates for an AODA assessment, which identified "a substance abuse issue." Piikkila testified that after the assessment was completed, she and David had "ongoing" conversations about "what he would need to do to … help rectify those concerns." She explained, however, that David failed to "follow through" on the recommendations set forth in the assessment. She testified that she and David had "a lot of conversations about needing to call" and "[n]eeding to schedule those appointments," but David failed to do so.

¶44 On this record, we cannot conclude it is reasonably probable that the jury would have reached a different result on the continuing CHIPS ground had David's trial attorney introduced evidence about the additional visits. David's argument that the additional visits would have shown that the County failed to make reasonable efforts to provide the required services during the middle part of the CHIPS case is speculative and unsupported by citations to evidence in the record. Under these circumstances, David has failed to meet his burden to establish that he was prejudiced by counsel's failure to introduce evidence regarding the additional visits.

   C. *Failure to object to testimony about Dylan's negative reactions to David during certain supervised visits*

¶45 David also argues that his trial attorney was ineffective by failing to object to Kantonen's and Frye's testimony about Dylan's negative reactions to him during certain supervised visits. He contends that testimony was inadmissible because it had no probative value as to either of the alleged TPR grounds. He also contends that any minimal probative value the testimony may have had was outweighed by the danger of unfair prejudice, as the testimony improperly invited

21

the jury to consider Dylan's best interests.  *See **Door Cnty. Dep't of Health & Fam. Servs. v. Scott S.***, 230 Wis. 2d 460, 468, 602 N.W.2d 167 (Ct. App. 1999) (stating "the best interests standard is confined to the dispositional phase, and … at the [grounds] stage, the best interests of the child are not to be considered"); *see also* WIS JI—CHILDREN 301 (2015) (instructing jurors that "[c]onsideration of the best interests of the child is a matter for the court in proceedings which will be conducted in the future; it is not a consideration for the jury").

¶46     Again, we need not determine whether David's trial attorney performed deficiently by failing to object to the testimony in question.  Instead, we conclude it is not reasonably probable that the jury would have reached a different result on the continuing CHIPS ground had counsel objected to, and succeeded in excluding, that testimony.

¶47     The County produced strong evidence on each of the three elements of the continuing CHIPS ground.  As to the first element, the County was required to show that Dylan was adjudged to be a child in need of protection or services and was placed outside his home for six months or longer pursuant to a court order containing the notice required by WIS. STAT. § 48.356(2).  *See* WIS. STAT. § 48.415(2)(a)1., 3.  To satisfy that element, the County relied on the July 22, 2016 CHIPS dispositional order.  The County also introduced undisputed evidence that Dylan had been placed outside of David's home for more than six months.  Based on that evidence, the parties stipulated that the first element of the continuing CHIPS ground had been satisfied, and the circuit court answered "yes" to the relevant question on the special verdict form.  As we discuss in greater detail in the next section of this opinion, the County's uncontroverted evidence was sufficient to establish the first element of the continuing CHIPS ground.

¶48     As to the second element, the County was required to prove that it made a reasonable effort to provide the services ordered by the court. *See* WIS. STAT. § 48.415(2)(a)2.b. The term "reasonable effort" means "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child …, the level of cooperation of the parent … and other relevant circumstances of the case." Sec. 48.415(2)(a)2.a.

¶49     The County presented evidence at the grounds trial that it: offered David visits with Dylan; arranged to transport David to those visits; arranged for an AODA assessment; attempted to assist David in obtaining treatment for his substance abuse issues; provided drug testing; and provided David with information about an organization that helped him to obtain housing. The County's witnesses also testified as to the difficulty they had in obtaining David's cooperation with some of the services that they attempted to provide. Piikkila conceded that the County had not made a referral for David to complete a parenting skills course, as required by the CHIPS dispositional order. She explained, however, that the County refers parents for that service when they are "30 days or closer to reunification," and David never reached that point due to his failure to comply with other required conditions.

¶50     Piikkila also testified that she had attended multiple permanency plan hearings during the CHIPS case, and in each of those hearings the court made a finding that the County had made reasonable efforts to achieve the goals of the permanency plan, one of which was reunification. Piikkila further testified that a parent has an opportunity to inform the court during a permanency plan hearing that he or she needs additional help from the County and to assert that the County is not making reasonable efforts to achieve the goals of the permanency plan.

Piikkila testified that David did not raise any issue regarding reasonable efforts in any of the permanency plan hearings that she attended. On this record, there was ample evidence from which the jury could conclude that the County made reasonable efforts to provide the services required by the CHIPS dispositional order.

¶51 Finally, to prove the third element of the continuing CHIPS ground, the County was required to show that David had failed to meet the conditions in the CHIPS dispositional order for Dylan's safe return to his home. *See* WIS. STAT. § 48.415(2)(a)3. Again, the County presented ample evidence to satisfy this element. Most importantly, the dispositional order required David to "[o]btain and maintain safe and stable housing for at least a six month period." Undisputed testimony at the grounds trial established that David had repeatedly refused to allow the County to access his home to determine compliance with that condition. Undisputed evidence also showed that David had failed to maintain weekly contact with the social worker assigned to the case, as required by the dispositional order.

¶52 Given the ample evidence that the County presented regarding each element of the continuing CHIPS ground, it is not reasonably probable that the jury would have reached a different result on that ground had David's attorney objected to the testimony about Dylan's negative reactions to David during certain supervised visits. The evidence about Dylan's reactions was simply not relevant to the continuing CHIPS ground, as it did not tend to prove or disprove any element of that ground. David asserts the admission of the evidence nevertheless prejudiced him because it improperly "focus[ed] the jury's attention on the wishes and best interests of the child," which created a "risk" that the jury "would consider those things instead of the actual requirements of the continuing CHIPS

24

ground." The jurors were expressly instructed, however, that they were not to consider the best interests of the child, nor should they be concerned about the final result of the TPR proceeding. We presume that jurors follow the court's instructions, *see* **State v. Truax**, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989), and David has not made a showing sufficient to overcome that presumption.

¶53 Ultimately, David has failed to establish a reasonable probability that the jury would have reached a different verdict on the continuing CHIPS ground had his trial attorney objected to the testimony about Dylan's negative reactions to David during supervised visits. The admission of that evidence—either when considered alone or when considered in tandem with counsel's failure to admit evidence of additional visits—does not undermine our confidence in the result of the grounds trial.

## II. Sufficiency of the evidence

¶54 David's final argument on appeal is that the County failed to introduce sufficient evidence at the grounds trial to establish the first element of the continuing CHIPS ground—i.e., that Dylan was adjudged to be a child in need of protection or services and was placed outside his home for six months or longer pursuant to a court order containing the notice required by WIS. STAT. § 48.356(2).[8] *See* WIS. STAT. § 48.415(2)(a)1., 3. David does not dispute that Dylan was adjudged to be a child in need of protection or services and was placed

---

[8] David does not argue that the evidence was insufficient to establish the second and third elements of the continuing CHIPS ground. We therefore do not address the sufficiency of the evidence as to those elements.

outside his home for six months or longer. He contends, however, that the CHIPS adjudication and out-of-home placement were not pursuant to a court order containing the notice required by § 48.356(2). More specifically, David argues the July 22, 2016 CHIPS dispositional order, which the County entered into evidence at the grounds trial, did not contain the requisite notice because it referred to the elements of the continuing CHIPS ground that existed under the 2015-16 version of the continuing CHIPS statute, rather than the amended version that was ultimately applied during David's TPR proceedings.

¶55 This argument fails in light of our supreme court's decision in *S.E.* Again, in *S.E.*, the court concluded that the notice provided by a 2016 CHIPS dispositional order that referred to the elements from the 2015-16 version of the continuing CHIPS statute was sufficient, even though the amended version of the statute was applied during the parent's subsequent TPR proceedings. *See S.E.*, 397 Wis. 2d 462, ¶24. As discussed above, the court reasoned that WIS. STAT. § 48.356(2) merely requires a circuit court to provide notice of the grounds for termination of parental rights that *may be applicable* at a future TPR hearing; it does not require a court to provide notice of the grounds that *will be applicable*. *S.E.*, 397 Wis. 2d 462, ¶¶24-25. The court expressly stated: "At the time a circuit court places a child outside the home or continues the child's out-of-home placement, the circuit court must give the parent notice of the grounds that <u>may</u> form the basis for a future TPR hearing—at the particular time the notice is given." *Id.*, ¶24.

¶56 That is precisely what occurred here. The July 22, 2016 CHIPS dispositional order gave David notice—as of the time the order was entered—of the grounds that might form the basis for a future TPR hearing. Under *S.E.*, it is of no import that the order referred to the 2015-16 version of the continuing

CHIPS statute, instead of the amended version that was ultimately applied at David's grounds trial. Although the *S.E.* court was not confronted with a sufficiency-of-the-evidence argument, the court's reasoning makes it clear that the CHIPS dispositional order in this case provided the notice required by WIS. STAT. § 48.356(2) and was therefore sufficient to satisfy the first element of the continuing CHIPS ground. As such, we reject David's sufficiency-of-the-evidence argument.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.